Bogavich *v.* Westinghouse Electric and Manufacturing Company, Appellant.

Argued November 13, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent.)

*James J. Lawler,* with him *Leo Daniels* and *Prichard, Lawler, Malone & Geltz,* for appellant.

*Gilbert E. Morcroft,* with him *James H. Brennan,* for appellee.

OPINION BY HIRT, J., March 8, 1948:

Claimant's husband came to his death during working hours at his accustomed working place on the premises of the defendant employer. He died from the effects of an explosion, under most unusual circumstances. Based on a finding of an explosion, "the cause of which is unknown", the referee concluded that claimant was entitled to compensation and made an award accordingly. The board set aside the finding and substituted the following: "The explosion which caused the death of claimant's decedent was caused by a device of his own making carried upon his person". The board's "appraisal of the factual situation [was] that the claimant's decedent constructed an explosive device out of materials he illegally possessed in his own home; that he carried it to work on his person *illegally* on January 6, 1945 . . ." and that his death resulted from an explosion of the device. The board dismissed claimant's petition for compensation on the ground that the death of claimant's husband from accident was not compensable because it was the direct result of his violation of law, in carrying explosives on his person. On appeal the lower court reversed the order of the board and reinstated the award of the referee. The judgment entered thereon must be reversed.

Rudolph Bogavich left his home, according to daily custom, at 7 A.M. on the morning of January 6, 1945 and reported for work in Section D-1 of the defendant's plant in East Pittsburgh at the usual time. The hours of his shift were from 7:30 to 3:30 P.M. Within the building there was a railroad track on which cars were placed for loading shipments of defendant's products.

Decedent was in charge of flat car loading. On the morning of decedent's death a flat car and a gondola, coupled together, were on the track inside the building. A large condenser had been loaded on the flat car and wooden housing had been built over it by workmen during the preceding night shift. At 8 A.M. claimant was on the flat car and by means of a mechanical stapling machine was covering the condenser with waterproof paper, preparing it for shipment. Shortly thereafter claimant ran out of staples. He got down from the flat car and walked along the passageway, 5½ feet wide between the factory wall and the tracks, in the direction of a cupboard to get more staples. He had gone only a short distance, about to the middle of the gondola, when a loud explosion was heard and dense blue smoke was seen to rise from underneath the freight car. Nearby workmen immediately went to the scene of the explosion. Bogavich was found face down on his right side upon the floor. He was dead. The left side of his body between the hip and the shoulder was entirely blown out; the body was eviscerated and the liver, kidney, heart and other organs were disrupted and torn. According to the coroner's physician the damage to his internal organs was so great that there was little left to examine. The left hand was torn off and was found separate from the body; the left forearm was not found intact. There was tearing of the left hand and some laceration of the right hand. Pieces of flesh, bones and clothing were found near the body and on the nearby factory wall as high as 40 feet above the floor. No damage was done to the building nor to the gondola car nor to any of defendant's machinery or equipment.

In decedent's home were found a coil of black powder safety fuse; one electric detonator; two railroad torpedoes; two Eveready flash light batteries dated for *"use before July 1944"*; a quantity of heavy copper and iron wire and a box containing six detonating caps. In or near decedent's torn side, as he lay on the shop floor,

were found two pieces of wire; pieces of a battery case and of a zinc battery shell and small pieces of an Eveready flashlight battery. Of more significance, were pieces of blue and red paper, part of the flashlight battery wrapping containing the notation "Eveready flashlight, use before July 1944".

Decedent was familiar with explosives and had the material in his home from which a small bomb could be constructed. The county detective testified that a railroad torpedo could be exploded by contact of a battery with a detonator cap and that it is a reasonable inference from the physical facts that death resulted from such device exploded in that manner. It is of no real significance that the detective was unable to set off a torpedo with an electric detonator cap found in decedent's home for the reason that the cap was defective. There was nothing defective in the detonating material which did cause the fatal explosion.

What decedent intended to do with the device admits of no satisfactory answer. His home life apparently was happy; he had no financial or other serious problems and it is agreed that the question of suicide is not in the case. He had been in the employ of the defendant for 25 years and was highly regarded as a capable, trustworthy and loyal employee. Sabotage is not suspected and in fact this small bomb could not have done serious damage to any machinery or manufactured products in defendant's plant. Every fact and circumstance raises the reasonable inference that the electric contact which set off the explosive was accidentally made. But the absence of an apparent motive does not impeach the finding of the board that claimant carried the device on his person.

The compensation board, in common with juries and other fact finding agencies, may make findings from direct proof, from circumstantial evidence or by inference from other facts within the limitation that the inferences from the facts and circumstances and conditions directly

proved, must be reasonable. *Yowkoski v. Hudson Coal Co.*, 159 Pa. Superior Ct. 256, 48 A. 2d 80. From the nature of decedent's torn body, the testimony will support no other conclusion than that Bogavich came to his death as the result of the explosion of a device carried on the left side of his person under his clothing. A piece of his clothing, completely cut out in the shape of the wound, was found some distance away from the body, clearly indicating that the explosion occurred on decedent's person and under his clothing. All of the circumstances support the finding of the board as to the cause of death.

Explosives were not used in defendant's plant and nothing relating to claimant's employment justified his possession of the device. The board found that decedent by his possession of explosives violated the Act of July 1, 1937, P. L. 2681, as amended by the Act of April 27, 1939, P. L. 34, 73 PS 151, as well as the Federal Explosives Act of December 26, 1941, 50 U.S.C.A. 121, et seq. Violation of law amounts to an abandonment of employment (*Shoffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 139 A. 192) and is a complete bar to compensation for resulting injury. Section 301 of art. III of the Workmen's Compensation Law as amended June 21, 1939, P. L. 520, 77 PS 431. Violation of law will result in forfeiting compensation if because of the violation the workman is injured.

The burden was on defendant employer to establish by a clear preponderance of the evidence that decedent's fatal injury resulted from his violation of law. *P. Gima v. The Hudson Coal Co.*, 106 Pa. Superior Ct. 288, 161 A. 903; *Yowkoski v. Hudson Coal Company*, supra. That burden has been met in this case. In fact the evidence will admit of no other conclusion. All of the findings of the board are based upon sufficient legally competent evidence and the award of the referee could have been affirmed by the board only by a capricious disregard of the compelling probative force of undisputed facts.

The findings of the board are consistent with each other and with its conclusions of law and its order. Cf. *Schrock v. Stonycreek Coal Co. et al.,* 152 Pa. Superior Ct. 599, 33 A. 2d 522; *Walsh v. Penn Anth. Mining Co.,* 147 Pa. Superior Ct. 328, 24 A. 2d 51. And since the findings are based upon sufficient legally competent evidence, the lower court was bound by the action of the board and was wholly without power to reverse the board and reinstate the award of the referee. The lower court in effect set aside the findings of the board and reinstated the findings of the referee on its appraisal of the weight of the evidence. In so doing in this case its action was extravagant beyond the bounds of its authority. *Corrento v. Ventresca,* 144 Pa. Superior Ct. 358, 19 A. 2d 746; *Osterritter v. Moore-Flesher Co.,* 150 Pa. Superior Ct. 236, 27 A. 2d 262.

Since the lower court was bound by the findings of the board we must regard the judgment before us on this appeal as a nullity. The action of the lower court could not affect the validity of the order made by the board. In reversing the lower court therefore the record need not be remitted for further proceedings.

The judgment is reversed, in effect reinstating the order of the board.