## Hall *v.* Carnegie Institute of Technology, Appellant.

460

Argued November 14, 1591.  Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*V. C. Short,* for appellants.

*Sam R. Keller,* for appellee.

OPINION BY ROSS, J., March 18, 1952:

The claimant in this workmen's compensation case is the widow of Robert A. Hall, who was killed on the premises of his employer by a self-inflicted gunshot wound. The compensation authorities' award was sustained by the court below and the employer took this appeal.

Hall was employed by the Carnegie Institute of Technology in Pittsburgh as a clerk in the chemical storeroom. One of his duties was to make an annual inventory of the chemicals in the storeroom and on the evening of May 4, 1949, he was engaged in making the usual annual inventory.

The storeroom in which the chemicals were kept was separated from the office of Miss Clara Jane Douglas, an associate professor of chemistry, by a corridor some six feet wide. A dispute centers around the question of whether Hall's duties required him to be in the office of Miss Douglas at any time, but she stated that it was necessary for him to be in her office on the night of May 4, 1949 to "consult about supplies for the laboratory. If necessary, to take stock of the chemicals".

At about eight o'clock that night Hall was taking inventory of the chemicals in the storeroom. About one-half hour later he entered Miss Douglas' office, accompanied by Charles Osterritter. Osterritter was at that time a "special policeman" employed by the appellant school to patrol its campus and to aid in the performance of his duties he carried a revolver. In the room, Osterritter invited Miss Douglas to inspect his gun "to feel it to see how heavy it was". When she hesitated, he assured her that it was empty and, by way of proof, exhibited "4 or 6" bullets in his left hand. Reassured, Miss Douglas handled the gun momentarily and then returned it to Osterritter. Thereafter, according to Miss Douglas, the gun was "passing back and

forth" between Osterritter and Hall until the latter, without explanation, "put the gun to his head" and pulled the trigger. The "empty" gun fired and Hall fell dead. The elapsed time between Hall's entry into the office and the fatal shot was "not more than 5 minutes". Osterritter, called as a witness by the appellant, corroborated Miss Douglas' version of the unfortunate incident up to the point at which she returned the revolver to him. Then, according to his testimony, he reloaded the gun, placed it in the holster and started to leave the room. After moving a few feet, he was "grabbed" by the neck by Hall, who then took the gun and turned it against himself.

Since the compensation authorities found in her favor, it is well established that the evidence must be read in the light most favorable to the claimant. The referee, affirmed by the board, found that Hall "was accidentally shot by himself" and the further "fact that there was no evidence of suicide", and the evidence sustains these findings. Realizing that the credibility of the witnesses was for the compensation authorities and also that it had the burden of proving suicide, the appellant, understandably, does not press that defense before us although it was interposed before the compensation authorities and in argument before the court below.

The only substantial question involved in this appeal is whether Hall suffered his injury "in the course of his employment". This is a question of law subject to review by us. *Haas v. Brotherhood of Transportation Workers*, 158 Pa. Superior Ct. 291, 44 A. 2d 776. "Under the Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises, subject to these limitations: (1) the employee's presence must ordinarily

be required at the place of injury, or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to an *abandonment of employment,* or be an act wholly foreign to his usual work; it must be merely *an innocent or inconsequential departure* from the line or place of duty." (Italics supplied.) *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 483, 139 A. 192. Cf. *Franks v. Point Marion Bridge Co.,* 128 Pa. Superior Ct. 269, 193 A. 421; *Weitz v. Weitz,* 136 Pa. Superior Ct. 191, 7 A. 2d 83; *Lewis v. Capital Bakers, Inc.,* 144 Pa. Superior Ct. 171, 18 A. 2d 883. The incident necessary to constitute a break in the course of employment must be of pronounced character. *Conley v. Pittsburgh Coal Co.,* 157 Pa. Superior Ct. 567, 43 A. 2d 605. Although the claimant had the burden of showing that her husband's death resulted from an accident sustained in the course of his employment, it is not necessary to show that it arose out of the employment. *Hale v. Savage Fire Brick Co.,* 75 Pa. Superior Ct. 454; *Hopwood v. Pittsburgh,* 152 Pa. Superior Ct. 398, 33 A. 2d 658; *Wolsko v. American Bridge Co.,* 158 Pa. Superior Ct. 339, 44 A. 2d 873.

The appellant contends that when Hall was killed as a result of the revolver shot, he had abandoned his employment and, therefore, was not in the course of it. To sustain its contention it relies primarily upon *Beamer v. Stanley Co. of America,* 295 Pa. 545, 145 A. 675, in which the employe was killed by the accidental discharge of a revolver which he had brought upon the employer's premises, while exhibiting it to some fellow workers. His duties did not require him to carry a revolver and the weapon was carried *without the employer's authority and against its wishes.* Furthermore, there was no necessity or reason for the gun to be brought upon the employer's premises. Here, not only

464

did Hall *not* bring the revolver upon the premises, but no orders of the employer were violated, and it is not contended that Osterritter did not have authority to carry the gun in the performance of his duties as a guard or special policeman. The cases are clearly distinguishable.

At the time of his fatal injury, Hall was in a place where his employment required him to be; he was killed as the result of what would have been merely a harmless prank if the facts had been as he reasonably supposed them to be; and the time away from his duties was not more than five minutes. Under such circumstances, the deviation of the employe must be classed as "merely an innocent or inconsequential departure from the line or place of duty". The employe's act should not be judged in the light of unexpected and unforeseen consequences of it; and no one would contend that Hall had abandoned his employment if during a brief leisure period he had placed an *empty* revolver to his head and pulled the trigger.

The appellant's contention that Hall met his death while committing an act in violation of law requires little discussion. The defense that an employe sustained his injury in the commission of an unlawful act is an affirmative one, with the burden on the employer to establish it. *Haas v. Brotherhood of Transportation Workers,* supra, 158 Pa. Superior Ct. 291, 44 A. 2d 776. In *Bogavich v. Westinghouse Elec. & Mfg. Co.,* 162 Pa. Superior Ct. 388, 57 A. 2d 598, upon which the appellant relies, the compensation authorities, in refusing an award, found that the employe was killed as a result of a violation of law, and we held that this finding was supported by sufficient legally competent evidence. In this case there is no finding that Hall committed any violation of law and there is no evidence

in the record that would sustain such finding had the compensation authorities made it.

When he met his death, Hall was on the premises of his employer during his regular hours of employment and at a place where his employment required him to be. He violated no positive orders of his employer and it is not shown that he incurred his injury while committing any act in violation of law. His act in placing what he, with reason, thought to be an empty gun to his head and pulling the trigger did not constitute an abandonment of his employment, and the claimant's award should be sustained under the authority of a long line of cases, including *Hale v. Savage Fire Brick Co.*, supra, 75 Pa. Superior Ct. 454; *Oldinsky v. Phila. & Reading Coal & Iron Co.*, 92 Pa. Superior Ct. 328; *Sinko v. Bethlehem Steel Co.*, 104 Pa. Superior Ct. 357, 159 A. 230; *Menendes v. Dravo Construction Co.*, 109 Pa. Superior Ct. 224, 167 A. 423; *Franks v. Point Marion Bridge Co.*, supra, 128 Pa. Superior Ct. 269, 193 A. 421. See also collection of cases starting on page 227, *Skinner's Pennsylvania Workmen's Compensation Law*, Vol. I, 4th Ed.

The parties have stipulated on the record that the claimant remarried on November 11, 1950. This change in her status necessitates the modification of the compensation award, and hence the record is remitted to the court below with instructions to remit the record to the board for the sole purpose of modifying the award to comply with the provisions of section 307 of the Workmen's Compensation Act as amended, 77 PS sec. 562.