## Mosher v. Athens G. L. F. Service Corp., Inc.

*Andrew B. Duvall, Jr.*, for claimant.
*William J. Davis*, for defendant.

WEBB, P. J., Fourth Judicial District, Specially Presiding, March 28, 1959.—This is an appeal from the decision of the workmen's compensation board dismissing the claim for workmen's compensation. The facts as found by the board are substantially as follows:

Claimant, Alfred G. Mosher, a resident of Athens, Pa., was an employe of the Athens G. L. F. Service Corporation, Inc., Athens, at a weekly average wage of $65. On May 17, 1957, claimant suffered an acci-

dental injury while in the employ of defendant. Right after the lunch period and after claimant and several other employes had finished loading a G. L. F. truck and were going into the mill to do another job, claimant and several fellow employes were standing talking and engaging in horseplay back and forth. While so engaged in horseplay, claimant started after another employe, Gerald Callear. Ernest LaRue Parmentier, who was also an employe, grabbed claimant from behind, picked him up and dropped him to the hardwood floor on his buttocks, resulting in an injury to claimant's back.

Following the injury, claimant continued to work with pain the rest of the day and thereafter up to May 27, 1957, inclusive. On May 28, 1957, he was hospitalized at the Robert Packer Hospital where he was treated until June 12, 1957. On June 2, 1957, claimant was examined by Dr. Arthur B. King and subsequently a herniated disc at L-5 was removed. The hospital and medical bill incurred as a result was $530.20. On September 5, 1957, he returned to work without any disability or loss of earning power. During the eight-year period prior to the accident claimant had periodically suffered from a preëxisting back condition which was aggravated by the accident of May 17, 1957, resulting in a herniated disc at L-5.

The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, art. 3, sec. 301(c), 77 PS §411, provides inter alia:

". . . The term 'injury by an accident in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business

or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."

Was claimant injured within the course of his employment within the meaning of this section of the act? This is the sole question for our determination. The board held he was not.

Defendant argues in his brief that the exclusion set forth in the above quoted section of The Workmen's Compensation Act applies. This exclusion is that part of the section which provides "the term injury . . . shall not include an injury caused by an act of a third person . . . ," etc.

The difficulty with this argument is that the referee and board did not so find. The board in their opinion, answering plaintiff's argument that it did not apply, said: "The fallacy in this argument is that the referee did not specifically apply the exclusion for he had no need to." The confusion in defendant's mind apparently comes from the use of the word "altercation" by the referee, and "altercation which apparently stemmed from horseplay" by the board. Unless the referee and the board found that the exclusion applied, the word "altercation" or altercation stemming from horseplay" and "horseplay" are synonomous and refer to the same thing. Counsel has cited no cases to the contrary.

We feel there is ample testimony to support the board's not finding that the exclusion applied.

The board found that claimant was not injured in the course of his employment on an entirely different theory. In their opinion the board said, inter alia: "We feel that the accident suffered by the claimant was clearly not in the course of his employment. There is no question that there was an altercation which apparently stemmed from 'horseplay', but the altercation was of the claimant's own making. In the cases cited by the claimant, the claimant was an innocent party." The board does not cite any authority, but apparently relies on the case of Mason v. Wildman Manufacturing Company, 12 W. C. B. 326 (1927).

We have found five or six cases where the appellate courts have considered the question of "horseplay" on the part of an employe.

The first of these cases is that of Hale v. Savage Fire Brick Company, 75 Pa. Superior Ct. 452 (1921). In that case a claimant, a boy 18 years old, was employed as a laborer. While eating his lunch on the employer's premises he was approached by two fellow workmen who asked him for some tobacco, and, on being refused, made an attempt to seize claimant and take the tobacco away from him. Claimant, in attempting to run away, fell over a wall 18 inches high and fractured both wrists. No ill feeling existed between the parties.

In the case of Oldinski v. Philadelphia and Reading Coal and Iron Company, 92 Pa. Superior Ct. 328 (1928), claimant's decedent was a slate picker working in appellant's breaker. During the noon hour the employe stopped work for lunch but remained on the premises. On the premises there were several retail coal chutes. During the lunch hour claimant's decedent jumped in the chute to take a ride; as he did so someone outside drew coal, and he was drawn into the coal pocket and suffocated.

In the case of McCoy v. Spriggs, 102 Pa. Superior Ct. 500 (1931), claimant's decedent was a carpenter. About lunch time, claimant's decedent had measured a board to be put in a floor and had walked across the room with this board and his handsaw to a keg on which he intended to saw the same. Close by the keg one of the other carpenters was down on his knee placing boards on the floor. Claimant's decedent, when he came to the man, laid one end of this board which he was carrying across this man's knee and said, "Is there anything I can do for you?" The man replied, "Take that board off my knee." Claimant's decedent dropped the board. The other man jumped to his feet, and they immediately engaged in a friendly wrestling match. Claimant's decedent threw the other man to the floor and shortly thereafter, while they were scuffling, claimant's decedent rolled over on his back unconscious and a short time later he was dead.

In the case of Sinko v. Bethlehem Steel Co., 104 Pa. Superior Ct. 357 (1932), claimant's husband and two other employes were waiting to begin their work. Decedent touched one of his fellow workers in the rectum. Thereafter the fellow employe and decedent engaged in a friendly bout, in the course of which decedent was struck a blow in the solar plexus and died almost immediately. There was no malice or angry words spoken between the parties.

In the case of Hall v. Carnegie Institute of Technology, 170 Pa. Superior Ct. 459 (1952), claimant's decedent was employed as a clerk in the chemical store room of defendant. In the course of making an inventory, he went in another office with one Charles Osterritter, a special policeman for defendant. While in the office, Osterritter took out his revolver and asked a lady in the office to inspect his gun, to feel it to see how heavy it was, assuring her that it was

empty. The gun passed back and forth between claimant's decedent and Osterritter. Finally, Mr. Osterritter started to leave the office and claimant's decedent grabbed him from behind, took the gun out of its holster, pointed it to his head and pulled the trigger.

In none of these cases is there any mention or comment by the court as to the employe starting the altercation. We can find no statement in any of these cases that compensation was allowed because someone else other than claimant or claimant's decedent started the "horseplay" or "skylarking." In the Hale case, two fellow employes started it. In the Oldinski case, the deceased employe rode down a coal chute on his own. In the McCoy case, claimant's decedent started the altercation by putting a board across a fellow employe's knee. In the Sinko case, claimant's decedent started it by touching a fellow employe in the rectum which led to the altercation or scuffle. In the Hall case, claimant's decedent grabbed a gun from a policeman and turned it on himself. It is only in the Hale case that it can be said that someone other than claimant started the "horseplay." In all the others, this "horseplay" was started by claimant's decedent.

These cases are apparently decided on the principle as set forth in the syllabus of Hall v. Carnegie Institute of Technology, supra:

"Under the Workmen's Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises, subject to these limitations: (1) the employe's presence must ordinarily be required at the place of injury, or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work; it must be

merely an innocent or inconsequential departure from the line or place of duty."

Our Workmen's Compensation Act does not require that the injury "arise out of the employment," but only that it occur in the "course of employment": Hale v. Savage Fire Brick Company, supra.

What is the situation in this case? Claimant, Alfred Mosher, was injured on the premises. He was on the premises in furtherance of his employer's business. He was on the way between jobs from one place to another. We do not find that he had abandoned his employment or was doing something foreign to it. What he was doing was merely an innocent or an inconsequential departure from the line and place of duty.

In our opinion he was injured during the course of his employment and compensation should be allowed.

While it is not necessary for a determination of the case, in view of the fact that the board apparently decided the case on the fact that the "horseplay" was of claimant's own making, it might be well to examine what the witness, Ernest LaRue Parmentier, *who was called by defendant*, said:

"Q. Who was the first of the three of you to start this fooling around, as you put it?

"A. Well, I guess I was."

It should also be noted that it was Parmentier who grabbed claimant and caused him to fall, causing the injury.

### Order

And now, to wit, March 28, 1959, the appeal is sustained, the action of the workmen's compensation board is reversed, and judgment is entered in favor of claimant, Alfred G. Mosher, and against defendant, Athens G. L. F. Service Corporation, Inc., as follows:

1. For compensation at the rate of $37.50 a week for total disability for a period from June 4, 1957, to September 4, 1957, inclusive, a period of 13 1/7 weeks, in the total amount of $492.86, and for costs and for interest on deferred payments from the date when the respective installments should have been paid.

2. For the costs of hospital services furnished claimant by Robert Packer Hospital, Sayre, in the amount of $530.20.