**NEVIN TRUCKING, Petitioner,**

v.

**WORKMEN'S COMPENSATION
APPEAL BOARD (MURDOCK),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 16, 1995.
Decided Nov. 8, 1995.

Timothy G. Wojton, for petitioner.

Amiel B. Caramanna, Jr., for respondent.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Nevin Trucking (employer) appeals from an order of the Workmen's Compensation Appeal Board affirming the referee's decision which granted the claim petition filed by Shawn Murdock (claimant). We reverse.

Employer raises three issues on appeal:

(1) whether the referee's decision, which found that an employer/employee relationship existed between claimant and employer, was supported by substantial evidence;

(2) whether the referee committed an error of law when he concluded that claimant was within the scope of his employment while engaged in an activity strictly prohibited and wholly foreign to his duty as a truck driver and in defiance of a positive order of employer; and

(3) whether the referee committed an error of law when he permitted claimant to introduce, at the close of his case, approximately $7,000 in medical bills in contradiction to the mandate and procedure of 34 Pa.Code § 131.61.

Claimant was an over-the-road truck driver who had been working for employer approximately three months. At the time that claimant began working for employer, claimant signed a form called a "driver certification." The form was also signed by a representative of employer. The driver certification indicated that claimant was to receive 20% of revenues for the loads that he hauled and the document contained the following provision: "I do understand and acknowledge I am responsible for the payment of my own federal and state taxes; my own social security taxes; and my own hospitalization and insurance for and in whatever amount that might be." Finding of Fact No. 14.

On February 17, 1993, claimant suffered an injury to his head and other parts of his body when a tire suddenly came off the trailer of his truck while he was trying to fix and change the tire. Claimant filed a claim petition on May 10, 1993, alleging that he had been injured on February 17, 1993, and had been off work since February 20, 1993.

Employer filed a responsive answer to the claim petition denying that claimant was an employee of employer and alleged that claimant's employment status was that of an independent contractor. In addition, employer alleged that claimant was engaged in an activity strictly prohibited by employer at the time of claimant's alleged injury. Employer further alleged that claimant was well aware that he was never authorized to make any repairs to the vehicles' tires while on the road.

Hearings were held before the referee on July 15, 1993, November 1, 1993 and December 23, 1993. At the December 23, 1993 hearing, claimant introduced into evidence fifteen medical bills. Employer objected to the introduction of the medical bills on the basis of hearsay and on the basis that such introduction was a violation of the Special Rules of Administrative Practice and Procedure before Referees, specifically 34 Pa.Code § 161.31. *See* 34 Pa.Code §§ 131.1–131.122.

The referee permitted the introduction into evidence ten of the fifteen submitted bills on the basis that they were shown to be causally connected to the work injury and were reasonable and necessary. Accordingly, the referee found that the ten bills were the responsibility of employer and ordered the payment thereof by employer.

After the close of the record, the referee made the following pertinent findings of fact:

25. Based upon a review of the foregoing, and a review of all the evidence of record, this adjudicator finds as fact the following:

(a) On February 17, 1993, at the time of the accident, the claimant was engaged in an employer-employee relationship with the alleged employer, Nevin Trucking. In so concluding, this adjudicator notes that, with regard to the critical factual aspects of the claimant's employment, there is no real dispute. In this regard, this adjudicator finds it as fact that the business of Nevin Trucking is, indeed, the business of directing the hauling of freight on an over-the-road basis. Claimant was a truck driver and performed such critical duties to vindicate and accomplish the business of the employer.

This adjudicator, in finding that there was an employer-employee relationship, also finds it as fact that this was the claimant's only job which he was undertaking. This adjudicator finds it a fact that it was the claimant's regular work. This adjudicator finds it a fact that the trucks were supplied by Mr. Nevin or his company, and possessed the names of his company on the tractors and on the tarps which were used to cover various freight.

This adjudicator finds it a fact that the employer had a specific or implied work rule that no changing of tires or other repairs were to be effected by drivers, but instead professionals were to be hired on the road with money provided by the employer to make such repairs. This adjudicator finds it a fact, in this general regard, that the employer supplied road money to its employees, including the claimant, to effectuate their duties. This adjudicator finds it a fact that the trucks used by the claimant and the other workers in general with the employer were kept at the Nevins' facility. This adjudicator finds it a fact that the purported employer, Nevin Trucking, had the power to hire and the power to fire the claimant.

This adjudicator, in so finding, has accepted as credible the testimony of Mr. Murdock with regard to the circumstances of his employment, noting further that the testimony of the senior Mr. Nevin and the other employees is credible and worthy of belief, but not different in material aspect from that of the claimant with regard to the critical issues of the circumstances of the claimant's employment.

It is specifically found as fact that the claimant was an employee of Nevin Trucking.

(b) The claimant was a travelling employee. Accordingly, he is hence presumed to be in the course of his work

even when he is away from the employer's premises.

(c) It is further found as fact that the claimant was in the course of his employment, and was furthering his employer's business at the time of the accident. The claimant was seeking to change the tire for safety purposes so as to effectuate a trip to Trenton and then on the rest of his run. In so concluding, this adjudicator has accepted as credible the testimony of the claimant.

(d) It is found as fact that the employer did, indeed, maintain a spoken or unspoken policy to the effect that employees were not supposed or expected to undertake their own repairs, including the change of tractor trailer tires. In so concluding, this adjudicator has accepted as credible the testimony of James and Ralph Nevin, and Mr. Fine.

(e) In changing the tire himself, the claimant was violating the policy of the employer. In changing the tire, the claimant was ignoring the communication made to him by Ralph Nevin that the problem tire was to be remedied in Trenton by a professional tire shop. It is found as fact that claimant violated a direction of the employer by trying to change the tire himself.

(f) It is found as fact that the claimant was trying to change the tire himself because funds were not or would not be at hand either in Newark or in Trenton, to secure the changing and/or repair of the tire. It is found as fact that claimant did not have any money because all of the "road money" which was provided to him had been expended by him at a tavern the night before. It is inferred by this adjudicator that claimant, either embarrassed or in any event uncertain with regard to proper procedures given this development, decided to seek out the changing and repair of a tire himself at an available location in Newark to avoid the wiring or delivery of further funds from his employer to effectuate the professional fixing of a tire. In so concluding, this adjudicator has accepted as credible the testimony of Mr. Popham. In so concluding, this adjudicator has rejected as lacking in credibility the testimony of Mr. Murdock, to the extent that he denied that he spent all his money at the tavern.

Based on all the findings, the referee concluded that claimant met the burden of demonstrating that (1) he was engaged in an employer/employee relationship with employer; (2) he suffered a work-related injury while engaged in the employer/employee relationship on February 17, 1993; (3) that he was totally disabled from this injury from February 18, 1993 through and including April 28, 1993. The referee concluded further that employer did not meet its burden of demonstrating that claimant, in being injured in the course of disobeying an order, violated an order sufficient to negate coverage or payment of compensation. The referee concluded that claimant was furthering the business of his employer and could not be deemed a trespasser or other wrongdoer for purposes of workers' compensation. Accordingly, the referee (1) granted claimant's claim petition; (2) awarded benefits for the period February 18, 1993 through and including April 28, 1993; (3) terminated compensation effective April 29, 1993; and (4) granted employer a suspension of benefits effective April 29, 1993.

Employer appealed to the board which affirmed the referee's decision. It is from that order that employer now appeals to this court.

■ Initially, we note that our scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

## I. WHETHER THE REFEREE'S FINDING THAT CLAIMANT IS AN EMPLOYEE AND NOT AN INDEPENDENT CONTRACTOR IS SUPPORTED BY SUBSTANTIAL EVIDENCE

■ The claimant has the burden of proving that an employee relationship existed and the question of whether the defendant was the employer of the claimant is a question of law based upon the findings of fact. *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 469, 434 A.2d 228 (1981). In a worker's compensation case, the referee is the ultimate finder of fact. *Beebe v. Workmen's Compensation Appeal Board (Bendix Corp.),* 112 Pa.Cmwlth. 578, 535 A.2d 1236 (1988).

Our Supreme Court has set forth the following guidelines to be utilized in the resolution of the question of whether an employer/employee relationship exists:

Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Southland Cable v. Workmen's Compensation Appeal Board (Emmett),* 142 Pa. Cmwlth. 612, 598 A.2d 329, 330–31 (1991) (quoting *Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 370, 243 A.2d 389, 392 (1968)) (quoting *Stepp v. Renn,* 184 Pa.Superior Ct. 634, 637, 135 A.2d 794, 796 (1957)).

■ "While none of these factors is in and of itself controlling, the right to control of the manner in which the work is accomplished is the most persuasive indication of the presence or absence of the employer/employee relationship." *Southland Cable,* 598 A.2d at 331 (citing *Lynch v. Workmen's Compensation Appeal Board (Connellsville Area School District),* 123 Pa.Cmwlth. 299, 554 A.2d 159 (1989), *petition for allowance of appeal denied,* 525 Pa. 629, 578 A.2d 416 (1990)). This court in *Southland Cable* pointed out that "our Supreme Court has held that neither the workmen's compensation authorities nor the court should be solicitous to find contractorship rather than employment, and inferences favoring the claim need make only a slightly stronger appeal to reasons than those opposed." *Id.* 598 A.2d at 331 (citing *Diehl v. Keystone Alloys Co.,* 398 Pa. 56, 156 A.2d 818 (1960)).

■ While acknowledging that each case must be decided on its own facts, *J. Miller Co. v. Mixter,* 2 Pa.Cmwlth. 229, 277 A.2d 867 (1971), employer argues that substantial evidence does not exist to support a legal conclusion that an employer-employee relationship existed on February 17, 1993.[1] We disagree.

It is clear from the referee's decision that he applied the controlling guidelines and found that claimant was an employee of employer. The referee specifically found, as fact, that (1) the business of employer was the business of directing the hauling of freight on an over-the-road basis; (2) claimant was a truck driver and performed such critical duties to vindicate and accomplish the business of employer; (3) truck driving was the only job claimant was undertaking; (4) truck driving was claimant's regular work; (5) trucks were supplied by Mr. Nevin or his company; (6) the trucks possessed the names of employer on the tractors and on the tarps which were used to cover various freight; (7) employer supplied road money to its employees, including claimant, to effectuate their duties; (8) the trucks used by claimant and other employees were kept at employer's facility; and (9) employer had the power to hire and to fire claimant. Finding of Fact No. 25a.

■ This finding was based on the credible testimony of claimant and employer with

1. Substantial evidence is that quantum of relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa.Cmwlth. 612, 587 A.2d 49 (1991), *petition for allowance of appeal denied,* 527 Pa. 654, 593 A.2d 425 (1991).

regard to the circumstances of claimant's employment. *See* Reproduced Record (R.) at 50a–92a; 111a–138a; 140a–171a. The referee, as the ultimate fact finder in workmen's compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921 (1991), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). This court may not disturb a referee's findings when those findings are supported by substantial evidence.

Employer contends, *inter alia*, that the driver certification signed by claimant, evidences an employment arrangement clearly not that of employer/employee. Employer argues that when a party is responsible for the payment of his own withholding and other payroll taxes and receives no benefits such as vacation, sick leave, holiday pay, or hospitalization, that person can only be described as an independent contractor.

■ The terms of the agreement between the parties is just one of the criteria utilized by the workers' compensation authorities and this court when ascertaining whether an employer/employee relationship exists. The driver certification signed by claimant indicates that he was responsible for the payment of his own federal and state taxes, social security taxes, hospitalization and other insurance. R. at 382a. In addition, claimant was to receive twenty percent of the revenue per contract load collected and payable by employer along with a year end bonus if employer turned a profit. *Id.* The agreement in no way states that claimant agreed to be an independent contractor. Moreover, "an agreement of the parties to a designation of their relationship that is contrary to the employer/employee relationship established otherwise is unavailing to effect a change." *Stillman v. Workmen's Compensation Appeal Board (CBR Enterprises)*, 131 Pa.Cmwlth. 106, 569 A.2d 983, 986 (1990).

As discussed above, an employer/employee relationship has been established based on the competent testimony of claimant and employer. Accordingly, the referee's finding that an employer/employee relationship existed between employer and claimant is supported by substantial evidence; therefore, the referee did not err as a matter of law in finding the existence of said relationship.

## II. WHETHER CLAIMANT WAS WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN THE INJURY OCCURRED

■ Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act[2] (Act) provides that a person shall be compensated for all injuries "sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere." Whether an employee is in the course of his employment at the time of his injury is a question of law which must be based on the findings of fact. *Roman v. Workmen's Compensation Appeal Board (Department of Environmental Resources)*, 150 Pa.Cmwlth. 628, 616 A.2d 128 (1992).

■ The course of employment is necessarily broader for traveling employees and is liberally construed to effectuate the purposes of the Act. *Id.* When a traveling employee is injured after setting out on the business of his employer, it is presumed that he was furthering the employer's business at the time of the injury. *Id.* The employer bears the burden of rebutting this presumption. *Id.* To meet its burden, the employer must prove that the claimant's actions were so foreign to and removed from his usual employment that they constituted an abandonment of that employment. *Id.; City of New Castle v. Workmen's Compensation Appeal Board (Sallie)*, 118 Pa.Cmwlth. 51, 546 A.2d 132 (1988) (burden of proving that a claimant's act was a violation of a positive order or instruction of the employer, thus taking the claimant out of the course of employment, is on the employer).

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

In the present case, employer argues that claimant was not within the course of his employment because he was engaged in an activity strictly prohibited and wholly foreign to his duty as a truck driver when claimant attempted to change a tire on his tractor. Employer contends that the act of changing the tire was contrary to its positive order which prohibited drivers from changing their own tires. To support this argument, employer relies on our Supreme Court's seminal decision in this area, *Dickey v. Pittsburgh & Lake Erie R.R. Co.*, 297 Pa. 172, 146 A. 543 (1929).

In *Dickey*, the claimant was a watchman for the employer's shops. The claimant was killed by a railroad engine when he crossed the tracks on a prohibited right of way to the carpenter shop. The claimant had been repeatedly instructed to use the boardwalk from the railroad station to the carpenter shop, as his duties began there and were performed on that part of the employer's property. Our Supreme Court determined that the claimant was not entitled to compensation because he committed an act in direct hostility to and in defiance of the positive orders of the employer. The Supreme Court held that:

> [I]njuries resulting from those acts which are in direct hostility to and in defiance of positive orders of the employer concerning instrumentalities, places or things about or on which the employee has no duty to perform, and with which his employment does not connect him, are not compensable under the clause in question.

> . . . .

> Here was a plain violation of positive instructions. It concerned a matter designed for the safety and protection of employees. He had no duty to perform on the place of the accident or the instrumentality that killed him nor did his work bring him in any manner in contact with them; as to these he was a stranger. To sustain a different theory would weaken the beneficial effect of the law, take from the employer all opportunity to guard against accidents and make discipline in a plant merely a thing of words only.

> Where an employee violates a positive rule as to entering forbidden parts of the owner's premises about which he has no duty to perform, or disobeys instructions against starting machinery or other dangerous agencies with which his work is not connected, and with which he has no business, and an injury results, he not only violates the orders of his employer, but is in the position of a trespasser who without right, authority or permission enters forbidden ground.

*Dickey*, 297 Pa. at 175–76, 146 A. at 544–45.

While affirming the denial of the claimant's benefits, our Supreme Court emphasized that a violation of an employer's positive order will not always result in a denial of compensation.

> Care must be taken not to confuse the principle enunciated, with negligent acts, willful misconduct, or those acts in disregard of positive orders of the employer where the employee's duties included the doing of the act that caused the injury, or where his duties were so connected with the act that caused the injury that, as to it, he was not in the position of a stranger or trespasser. The violation of positive orders under these circumstances does not prohibit compensation for injuries sustained therefrom.

*Id.* at 175, 146 A. at 544 (citations omitted).

Our research in this area reveals that the affirmative defense of a violation by an employee of a positive order or rule is relatively obscure. Decisions rendered by our Superior Court in the 1930's and 1940's disclose that the essential requirements of the doctrine that must be proven by the employer are that (1) the injury was, in fact, caused by the violation of the order or rule, *Walker v. Nu–Car Carriers, Inc.*, 164 Pa.Superior Ct. 246, 63 A.2d 484 (1949); (2) the employee actually knew of the order or rule, *Jenkins v. Glen Alden Coal Co.*, 126 Pa.Superior Ct. 326, 191 A. 227 (1937); and (3) the order or rule implicated an activity not connected with the employee's work duties, *Tappato v. Teplick & Eisenberg Co.*, 133 Pa.Superior Ct. 231, 2 A.2d 545 (1938).

In the present case, the referee found that employer had a specific or implied work rule that no changing of tires or other repairs were to be effected by the driver, but instead professionals were to be hired on the road with money provided by employer. Finding of Fact No. 25a. In addition, the referee found that, in changing the tire, claimant was ignoring the communication made to him by employer that the problem tire was to be remedied in Trenton by a professional tire shop. Finding of Fact No. 25(e). However, the referee found that claimant was in the course of his employment and was furthering employer's business at the time of the accident. Finding of Fact No. 25(c). The referee found that claimant was seeking to change the tire for safety purposes so as to effectuate a trip to Trenton and then on the rest of his run. *Id.*

From these findings, the referee, relying on *Dickey,* concluded that claimant was in violation of this known policy and order, was negligent, and was hurt as a result. Conclusion of Law No. 6. However, the referee concluded further that claimant was furthering, however marginally, employer's interest in seeking to change the tire and was not outside the realm of work activities. *Id.*

We do not believe the facts, as found by the referee, support the referee's conclusion that claimant was in the course of his employment when he changed the tractor tire. To the contrary, the facts support the conclusion that claimant was outside the realm of his work activities.

Employer's policy was that the employees were not supposed to or expected to undertake their own repairs, including the change of tractor trailer tires. Finding of Fact No. 25(d). The reasons behind this policy were safety related and employer did not provide the tools necessary to accomplish such a task. R. at 91a.

The referee found that the injury, was, in fact, caused by the violation of this policy and that claimant actually knew of the policy. Finding of Fact No. 25. Moreover, the referee found, as fact, that claimant ignored a communication made to him by employer that the problem tire was to be remedied in Trenton by a professional tire shop. Finding

of Fact No. 25(e). This finding was based on the testimony of Ralph Nevin who was working as the dispatcher on the day of claimant's injury. *Id.*

The record shows that claimant telephoned employer's dispatch office prior to changing the tire and spoke with Ralph Nevin. R. at 80a. As a result of this conversation, Ralph Nevin determined that the tire was not unsafe and directed claimant to deliver his load to Trenton and then employer would take care of changing the tire. R. at 83. Ralph Nevin was aware that claimant did not have any money because claimant had spent all his money at a tavern. R. at 92a.

With regard to the fact that claimant was out of money, the referee found that claimant, given this development, decided to seek out the changing and repair of the tire himself at an available location in Newark to avoid the wiring or delivery of further funds from his employer to effectuate the professional fixing of a tire. However, the record shows that claimant never had authorization from employer to change the tire himself and because Ralph Nevin knew that claimant was out of money, claimant was not authorized by employer to have the tire changed by a professional in Newark. R. at 83–87.

The present case is analogous to the situation found in *Demuzzio v. Lattimer Coal Corporation,* 157 Pa.Superior Ct. 459, 43 A.2d 597 (1945). In *Demuzzio,* a claimant was specifically ordered by his supervisor from working in a certain area after the supervisor had inspected the area because of apparent danger. Despite his supervisor's warning, claimant entered and worked in the forbidden area resulting in claimant's death. The Superior Court affirmed the board's denial of compensation because claimant had disobeyed a specific order not to work in the place where he was killed.

As stated above, employer's policy in the instant matter was that employees were not to change tractor tires and the reasons behind this policy were safety related. Claimant's awareness of employer's policy and claimant's decision to ignore the policy after the direct communication of that policy to claimant on the day of his injury, resulted in

claimant performing an activity not connected with claimant's work duties.

In *Dickey,* the Supreme Court held that course of employment did not include an act in defiance of the positive orders of the employer. *Dickey,* 297 Pa. at 175, 146 A. at 544. We recognize that our Supreme Court clarified that the violation of a positive order intimately connected with the employee's work duties is likened to a negligent act thereby entitling a claimant to compensation. But the changing of tires was not part of claimant's work duties nor connected thereto because performing repairs on such instrumentality was expressly prohibited by employer. Therefore, claimant had no duty to change the tire, especially when employer was made aware that claimant had a problem tire with no money to have it fixed and still directed claimant to have it changed by a professional. As pointed out previously in this opinion, the referee specifically found that claimant ignored the communication made to him by Ralph Nevin that the problem tire was to be remedied in Trenton by a professional tire shop.

Accordingly, the referee erred as a matter of law in finding that claimant was furthering employer's business and, therefore, in the course of his employment when claimant was injured.

### III. WHETHER THE REFEREE ERRED IN PERMITTING CLAIMANT TO INTRODUCE CERTAIN MEDICAL BILLS, AT THE CLOSE OF HIS CASE, IN CONTRAVENTION OF 34 PA.CODE § 131.61.

■ Finally, employer contends that the referee erred by permitting claimant to introduce into evidence, at the last minute, copies of his medical bills. Employer argues that this is clearly a violation of the Special Rules of Administrative Practice and Procedure Before Referees, as well as due process and fair play.

Chapter 131 of Title 34 of the Pennsylvania Code sets forth these special rules. Specifically, section 131.61 governs the exchange of documents and records and provides that the parties shall exchange all items and information, including medical documents, to the extent practicable, prior to the first hearing actually held. 34 Pa.Code § 131.61. Any items not exchanged prior to the first hearing which becomes available later, shall be exchanged within ten days after receipt by the party of the item or information. *Id.* Any items or information not provided within the applicable time periods will not be admitted, relied upon or utilized in the proceedings or referee's rulings, as appropriate. *Id.*

Pursuant to the special rules, the referee "may, for good cause, waive or modify a provision of this chapter upon motion of a party, agreement of all parties or upon the referee's own motion." 34 Pa.Code § 131.3(a). The referee herein made employer aware of this waiver rule during the December 23, 1993 hearing and acknowledged that he understood that the rules required that the records are to be tendered in such a manner that a party is not to be prejudiced. R. at 81a–82a. In his final decision, the referee permitted the introduction of ten of claimant's fifteen medical bills, finding that the ten permitted bills were shown to be causally connected to the work injury and were reasonable and necessary. Finding of Fact No. 22(f).

On appeal herein, employer does not argue how the late submission of the medical bills violated its due process rights or the notion of fair play. Employer's argument addresses only that such submission was a clear violation of the Special Rules of Administrative Practice and Procedure Before Referees. A review of the introduced bills, which the referee permitted to be submitted into evidence reveals that they are, indeed, causally connected to the work injury and are reasonable and necessary. Since the referee has the discretion to waive the requirements of the special rules and employer has not shown any prejudice as a result, we conclude that the referee did not err in permitting the introduction into evidence those bills which were causally related to claimant's work injury and were reasonable and necessary.

Accordingly, the board's order affirming the referee's decision is reversed.

*ORDER*

NOW, this 8th day of November, 1995, the order of the Workmen's Compensation Appeal Board, dated December 1, 1994, at No. A94–0854, is reversed.