598 A.2d 329

**SOUTHLAND CABLE COMPANY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (EMMETT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 19, 1991.

Decided Oct. 3, 1991.

N.R. Zuschlag and James A. Mazzotta, for petitioner.

Samuel S. Blaufeld and Pamela M. Schiller, for respondent.

Before COLINS and KELLEY, JJ., and BLATT, Senior Judge.

KELLEY, Judge.

Southland Cable Company (employer) appeals from an order of the Workmen's Compensation Appeal Board (board) which affirmed a referee's decision awarding benefits under a fatal claim petition to Cheryl Ann Emmett (claimant) pursuant to The Pennsylvania Workmen's Compensation Act[1] (Act). We affirm.

Claimant's husband, Eugene Clayton Emmett (decedent), had worked as a cable installer[2] for some six months prior to his death in a motor vehicle accident on April 4, 1986. Claimant filed the instant fatal claim petition on August 6,

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

2. Decedent's job consisted of "swinging" or "dropping" television cable from telephone poles to houses. A list of addresses was periodically supplied by employer, who also provided all materials used in the installation. The cable installers were paid weekly according to the number of "drops" performed.

1986, alleging that decedent's death was caused by injuries sustained during the course of his employment. Employer argued that decedent was an independent contractor rather than an employee and, as such, was outside the scope of the Act. Alternately, employer contended that even if the requisite employer/employee relationship were found to exist, decedent was not acting within the course of his employment at the time of his death.

Following several hearings at which both parties presented testimony, the referee found that decedent was an employee for purposes of the Act and was within the course of his employment at the time of the fatal accident. The board affirmed and employer appealed to this Court, preserving on appeal the same two issues first argued before the referee, which we will now proceed to discuss. We note that our scope of review is whether there has been a violation of constitutional rights, error of law, or whether necessary facts are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

## EMPLOYER/EMPLOYEE RELATIONSHIP

The claimant has the burden of proving the existence of the employer/employee relationship at the time of the fatal injury. *Gill v. Workmen's Compensation Appeal Board*, 57 Pa.Commonwealth Ct. 161, 425 A.2d 1206 (1981). The existence of an employer/employee relationship is a question of law based on findings of fact. *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board*, 61 Pa.Commonwealth Ct. 469, 434 A.2d 228 (1981).

The Act itself does not define the elements which must exist to find an employer/employee relationship; however, we have long utilized the same rules that apply for ascertaining a common-law master/servant relationship. *Hollen v. Workmen's Compensation Appeal Board*, 14 Pa.Commonwealth Ct. 209, 321 A.2d 733 (1974). Our Supreme Court has set forth the following guidelines:

Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 370, 243 A.2d 389, 392 (1968) (quoting *Stepp v. Renn,* 184 Pa.Superior Ct. 634, 637, 135 A.2d 794, 796 (1957)).

■ While none of these factors is in and of itself controlling, the right to control of the manner in which the work is accomplished is the most persuasive indication of the presence or absence of the employer/employee relationship. *Lynch v. Workmen's Compensation Appeal Board (Connellsville Area School District),* 123 Pa.Commonwealth Ct. 299, 554 A.2d 159 (1989), *petition for allowance of appeal denied,* 525 Pa. 629, 578 A.2d 416 (1990).

■ The referee made the following pertinent finding of fact:

This referee finds that the decedent was an employee, not an independent contractor, for the following reasons:

(a) Southland Cable Company provided the decedent daily with a list of addresses at which the decedent was to install the cable.

(b) Southland Cable Company maintained control over the work performed since it inspected the work performed, required the work which was found to be deficit [sic] to be repaired at no cost and retained a portion of the decedent's earnings (the only deduction made) until it determined the work was properly done. In addition, the defendant had terminated the employment of another installer for failure to show up regularly for work.

(c) Although the defendant did not provide tools aside from the specialty tools and security tools, the defendant routinely provided the materials such as cables,

grounding, supplies, clamps, etc., for the decedent to perform the job.

(d) The defendant/employer provided the decedent with signs with the defendant/employer's name and telephone number which were to be displayed on the decedent's vehicle at all times. These signs were on the vehicle at the time of the accident.

(e) The defendant provided the decedent with a photograph identification badge which was to be worn at all times.

(f) The defendant provided the decedent with assistance in traffic control (personnel and materials) when the decedent worked in heavy traffic areas.

Although the burden of showing an employer/employee relationship is on claimant, our Supreme Court has held that neither the workmen's compensation authorities nor the court should be solicitous to find contractorship rather than employment, and inferences favoring the claim need make only a slightly stronger appeal to reasons than those opposed. *Diehl v. Keystone Alloys Co.*, 398 Pa. 56, 156 A.2d 818 (1960).

The reasons expressed by the referee provide a more than adequate basis for finding an employer/employee relationship. In addition to testimony that employer retained some control over the manner in which the work was done, there is competent testimony that employer also provided some tools and identification materials, retained the right to terminate the employment at any time, and that the work performed by decedent was part of the regular business of employer, i.e., cable installation.[3]

**3.** This factor is similar to the "relative nature of the work test," as formulated in Larson, Workmen's Compensation Law, §§ 43.50–43.54 (1991). Professor Larson argues that instead of the "control" test mandated under the common-law master/servant analysis, the preferred analysis contains the following factors:

[T]he character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continu-

The fact that signs bearing employer's name were affixed to decedent's truck is also persuasive, since "[it] is well-settled that the presence of a party's name ... on a commrcial [sic] vehicle raises a rebuttable presumption that the vehicle is owned by that party and that the driver of the vehicle is an employe of that party acting within the scope of his employment." *Workmen's Compensation Appeal Board v. Navajo Freight,* 19 Pa.Commonwealth Ct. 25, 31, 338 A.2d 766, 769 (1975).

On the facts found by the referee in this case, we cannot find that the referee erred as a matter of law in finding the existence of an employer/employee relationship.

### COURSE OF EMPLOYMENT

Decedent's fatal accident occurred on Route 22 in West Hanover Township, Dauphin County, at approximately 11:58 a.m. on April 4, 1986. Decedent's truck was travelling west at the time of the accident. During the days immediately preceding his death, decedent was engaged in cable installation in two different areas, one located east of the accident site and the other located to the west.

Claimant testified that she had spoken with decedent the night before the accident, and that decedent had informed her of his intention to work on April 4 and return home around 7:00 or 8:00 p.m., his "usual time." [4] Claimant's

ous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job.
Larson, § 43.52.

While recognizing the appeal and the trend toward the adoption of this test, we do not find it necessary to adopt it here, but merely point out that we believe that the essential elements of the test are already encompassed by several of the factors listed in *Hammermill Paper Co.,* i.e., the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; and whether the work is part of the regular business of the employer.

In this case, these factors weigh heavily in favor of finding an employer/employee relationship.

4. Reproduced Record (R.) at 11a. Decedent's home was located in Westmoreland County, Pennsylvania, roughly 3 to 4 hours driving time from the Harrisburg area.

theory, therefore, was that decedent was en route between the two work areas at the time of his death.

Employer presented testimony that decedent had appeared at employer's office at approximately 8:00 or 8:30 a.m. on April 4 to pick up his check.[5] Employer's witness testified that decedent remained in the office until approximately 11:00 a.m. and then stated that he planned to go to the bank to cash his check and then go home, due to the inclement weather.[6] The same witness testified that the only location at which decedent would be able to cash his paycheck was a branch of Dauphin Deposit Bank, located on Route 22 some distance west of the accident site.[7]

After hearing all of the testimony and viewing a map which was introduced into evidence, the referee concluded that the location of the accident was more consistent with claimant's testimony than employer's. The referee also specifically did not find the testimony of employer's witness to be credible, due to the location of the accident.

Our analysis begins with Section 301(c)(1) of the Act, 77 P.S. § 411(1), which provides in pertinent part: "The term 'injury arising in the course of ... employment,' as used in this article, ... shall include all ... injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, ..."

█ Decedent in this case did not work on employer's premises, but instead more closely fits the category of "traveling employee." We have held that the scope of employment for a traveling employee is necessarily broader than that of an ordinary employee. *Shreckengost v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 587, 403 A.2d 165 (1979). When an employee starts out on the business of his employer and is later fatally injured, a presumption arises that the employee was engaged in the

5. R. at 66a.
6. R. at 66a–67a.
7. R. at 67a.

furtherance of employer's business at the time of his death. *Aluminum Co. of America v. Workmen's Compensation Appeal Board,* 33 Pa.Commonwealth Ct. 33, 380 A.2d 941 (1977).

The question of whether one is acting within the scope of his employment is one of law, which is based upon findings of fact. *Greene v. Marger, Inc.,* 12 Pa.Commonwealth Ct. 423, 317 A.2d 358 (1974). Both claimant and employer testified as to what decedent's plans were on the day in question. There was no direct testimony as to where decedent was actually going at the time of the fatal accident. The referee inferred from the testimony and from a map of the area that claimant was in transit between two work areas and not between employer's office and the bank. Employer now argues that such an inference is not based on substantial competent evidence. We cannot agree.

Although direct evidence as to decedent's destination would certainly have been preferable, no such evidence existed in this case. However, it is within the province of compensation authorities to draw permissible inferences fairly deductible from proven facts. *Township of Salem v. Workmen's Compensation Appeal Board,* 62 Pa.Commonwealth Ct. 626, 437 A.2d 496 (1981).

In *Township of Salem,* decedent, a township roadmaster whose normal working hours were from 7:00 a.m. to 3:30 p.m., was killed when his truck slid off a snow-covered road at approximately 3:50. As in this case, there was no affirmative evidence as to what decedent's actual destination was at the time of the accident. The referee found that decedent was checking the road conditions at the time of the accident, and therefore was within the scope of his employment. The court found this a permissible inference from the evidence and further found that, while the evidence may have also permitted an inference that decedent was engaged on a mission of his own, the inference to be adopted was for the referee. *See also Lang v. Workmen's Compensation Appeal Board (U.S. Steel Corp.),* 108

Pa.Commonwealth Ct. 381, 529 A.2d 1161 (1987), *petition for allowance of appeal denied*, 518 Pa. 614, 540 A.2d 535 (1988) (permissible inference that decedent acting within scope of employment absent direct evidence of destination).

Based on the facts in this case, we conclude that the referee did not err as a matter of law in finding that decedent was within the scope of his employment at the time of his fatal accident on April 4, 1986. Accordingly, the order of the board is affirmed.

## ORDER

AND NOW, this 3rd day of October, 1991, the order of the Workmen's Compensation Appeal Board, No. A–97894, dated October 31, 1990, is affirmed.