**Mark HESS, Petitioner,**

v.

**WORKMEN'S COMPENSATION AP-
PEAL BOARD (John J. CASEY
Branch No. 115), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 29, 1995.
Decided Feb. 21, 1996.

Jerome L. Cohen, for Petitioner.

Patrick R. Casey, for Respondent.

Before COLINS, President Judge,
PELLEGRINI, J., and LORD, Senior
Judge.

COLINS, President Judge.

Mark Hess (Petitioner) petitions this Court for review of the August 8, 1995 order of the Workmen's Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ) granting Petitioner's claim for benefits. We affirm.

Petitioner, a United States Postal Worker and a union shop steward in the John J. Casey Branch # 115 of the National Association of Letter Carriers (Union), was in Atlantic City, New Jersey in preparation for a "rap session" sponsored by the Union when he was criminally assaulted on February 7, 1993. The Union activities were scheduled to begin February 8, 1993. As a result of this assault, Petitioner suffered severe injuries that disabled him from his employment as a mail carrier.

On March 17, 1993, Petitioner filed a claim petition against the Union. The WCJ found that Petitioner worked as a mail carrier for eight years; during the last three of those years, Petitioner also served as a shop steward for the Union. As a postal worker, Petitioner earned $936.00 per week and earned $440.00 per year from his union activities.

The WCJ concluded that Petitioner while "not technically an employee of the union, as that term is commonly used, ... was performing a valuable service for the Union for a valuable consideration, which is the definition of an employee"[1] in Section 104 of the Workers' Compensation Act.[2] The WCJ also concluded that Petitioner's employment with employer was concurrent with his union activity. In support of these conclusions, the WCJ found the following facts:

4. On Sunday, February 7, 1993, Branch # 115 rented a van for several of its local union officials to travel to a work session in Atlantic City; the union also provided meals and lodging and compensated union officials for any lost wages they had while away from their regular work.

5. For those union officials traveling to the meeting from out of town, lodging was made available on Sunday evening, although the official union business was not to commence until Monday morning. After arriving in Atlantic City on Sunday, Mr. Hess and another member of the union went to a local restaurant for dinner

and were assaulted on their return to the hotel.

. . . .

7. It is the claimant's contention that his injuries were caused while he was in the course and scope of his employment with the union and that because he was concurrently employed with the post office he should be compensated for all his lost wages as well as medical expenses resulting from the incident. The claimant contends that but for his position with the union, he would not have been in Atlantic City on the evening of February 7, 1993 and not have been a victim of the assault.

8. According to Mike Wills, the President of Branch # 115, the union activities are voluntary and the claimant's presence at the union meeting on February 7, 1993 was not mandatory nor was the claimant performing any union functions at the time of the attack. Finally, Mr. Wills presented the union's workers' compensation insurance policy which only lists its immediate staff as employees of the union and did not show the claimant as an employee of the union.

Based on the above-referenced conclusions and findings of fact, the WCJ granted Petitioner's claim petition. The Union appealed to the Board, which, citing this Court's decision in *Gabonay v. Workmen's Compensation Appeal Board (United Auto Workers, Local 2055)*, 168 Pa.Cmwlth. 499, 650 A.2d 1208 (1994), *petition for allowance of appeal denied*, —— Pa. ——, 665 A.2d 470 (1995), reversed on account of the voluntary nature of Petitioner's presence in Atlantic City.

██ In his brief to this Court, Petitioner raises two issues for this Court's consideration: (1) whether he was an employee of the Union when he suffered injuries during an attempted robbery while attending a Union-sponsored event and (2) whether Petitioner's injury occurred during the course of employment with the Union.[3]

---

1. WCJ's Conclusion of Law No. 2.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 22.

3. In reviewing Board decisions, this Court's scope of review is limited to a determination of whether there was an error of law or abuse of discretion committed, and whether the WCJ's findings of fact are based upon substantial evi-

In support of his first issue, Petitioner argues that as a shop steward, he had certain obligations that included attendance at information sessions such as the one conducted in Atlantic City; that the Union provided transportation on February 7, 1993 to ensure timely arrival for the meetings that commenced on February 8, 1993 at 9:00 a.m.; and, that the Union provided lodging, meals and pay to Petitioner. The Union argues in response that the Petitioner's position as a shop steward was voluntary; Petitioner was not required to travel to Atlantic City on February 7, 1993; the Union activities Petitioner was attending were voluntary; Petitioner's presence at the rap session was not mandatory; and, Petitioner did not receive any pay from the Union for February 7, 1993.

■ "The claimant has the burden of proving the existence of the employer/employee relationship at the time of the ... injury." *Southland Cable Co. v. Workmen's Compensation Appeal Board (Emmett)*, 142 Pa.Cmwlth. 612, 598 A.2d 329, 330 (1991). "Whether an employer/employee relationship exists is a question of law which must be determined on the basis of the facts of an individual case." *Industrial Abrasives, Inc. v. Workmen's Compensation Appeal Board (Caceres)*, 157 Pa.Cmwlth. 558, 630 A.2d 547, 548 (1993). The existence of that relationship is predicated upon proving indicia of control that include the employer's right to control the work to be done and the manner of performance, the nature of the work, the skills required, which party supplies the tools, the method of payment, whether the work is part of the employer's regular business, and the right to terminate the employment at will. *Id.*

In *Gabonay*, this Court affirmed the Board's reversal of a workers' compensation referee's grant of benefits to Gabonay, an employee of Volkswagen America (Volkswagen) and member of the United Auto Workers of America, Local 2055's (UAW) recreation and community services committee. Gabonay's membership on those com-

mittees was voluntary. As a member of the community services committee, Gabonay attended a one-week institute on Dislocated Worker's Assistance sponsored by the International Union of UAW in Black Lake, Michigan. Interested members were directed to register for the institute as early as possible. For those attending the institute, the International Union would pay for travel expenses, lodging, and meals, and the UAW Local would pay for lost work time. While at the institute, Gabonay suffered a heart attack. Gabonay subsequently applied for benefits claiming a work-related injury caused by the stress of attending the institute for the UAW Local. Gabonay's petition was contested by the UAW Local and its insurance carrier on the grounds that Gabonay was not an employee of the UAW Local as defined in Section 104 of the Act, 77 P.S. § 22. The referee held hearings and concluded that Gabonay was an employee of the UAW Local and thus, was entitled to benefits. The Board reversed, finding nothing in the record to substantiate a finding of an employer/employee relationship between Gabonay and the UAW Local. Gabonay petitioned this Court for review of the Board decision.

This Court, agreeing with the Board that Gabonay had failed to establish an employment relationship with the UAW Local, noted the following:

> The record indicates that Gabonay was not regularly paid for his committee activities. The payments made by the UAW Local for February 21 and 22 were compensation for time lost at Volkswagen at a per diem rate equal to Gabonay's daily average wage at Volkswagen. The rate of payment was not related to hours of work or services performed at the institute. Gabonay's activities there were not shown to be in furtherance of union business. Furthermore, the record does not show that the UAW Local had any control over any aspect of Gabonay's attendance of the institute programs or his performance. Gabonay's attendance and participation appear to have been vol-

dence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988), *appeal after*

*remand on other grounds*, 143 Pa.Cmwlth. 69, 598 A.2d 602 (1991).

untary. The record reveals no evidence that the union chose Gabonay as its representative or that it in any way solicited or directed his attendance.

*Gabonay,* 650 A.2d at 1210.

██ In this case, we conclude that Petitioner failed to sustain his burden of proving facts necessary to support an employment relationship with the Union. The WCJ's findings of fact do not support Petitioner's claim of the existence of an employer/employee relationship between the Union and himself.

While it is true that Petitioner here, unlike in *Gabonay,* received a sum of money, albeit small, for his Union position, the findings of fact do not evidence the requisite indicia of control. Like the claimant in *Gabonay,* the record establishes that Petitioner's position with the Union was voluntary, Petitioner was encouraged but not required to attend the informational session in Atlantic City, and the payments made by the Union were for reimbursement of lost wages but bore no relationship to the hours of work or service performed in Atlantic City.

Based on the foregoing, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.[4]

### ORDER

**AND NOW,** this 21st day of February, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is **AFFIRMED.**

4. Based on our resolution of Petitioner's first   issue, we need not address his second issue.