**Joel SCHER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA and Compservices, Inc.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 19, 1999.

Decided Sept. 23, 1999.

Reargument Denied Dec. 3, 1999.

---

Gregory J. Boles and Natalie Klyashtorny, Philadelphia, for petitioner.

William C. McGovern, Philadelphia, for respondent.

Before SMITH, J., KELLEY, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Joel Scher (Claimant) petitions this Court to review an order of the Workers' Compensation Appeal Board (Board) reversing a decision entered by a workers' compensation judge (WCJ) granting Claimant's claim petition and awarding counsel fees for an unreasonable contest. The Board concluded that Claimant had failed to meet his burden of proving that he was injured during the course of his employment and, alternatively, that he failed to provide adequate notice of a work injury to his employer. We reverse in part and affirm in part.

Claimant was employed by the City of Philadelphia (Employer) as a court reporter in the Family Court Division of the Court of Common Pleas of Philadelphia County. On June 18, 1989, a Sunday, Claimant was injured while travelling to a typist whom he hired to prepare a transcript that was ordered by the Honorable Frank Jackson and which was to be presented in court the next day. As a result of the injuries received, Claimant alleged that he was totally disabled from performing his duties as a court reporter and, accordingly, filed a claim for workers' compensation benefits with Employer. Employer denied the material allegations of Claimant's petition, arguing that Claimant failed to give proper notice to Employer regarding the alleged work-related injury and that Claimant was not working within the course and scope of his employment at the time.

Following a hearing, the WCJ made the following relevant findings of fact:

2. On or about June 12, 1989, the Honorable Frank Jackson ordered Claimant to prepare notes of testimony for presentation to the Court on Monday, June 19, 1989.

3. In accordance with his normal practice, Claimant dictated these notes after court hours and delivered them to a typist in New Jersey to be transcribed.

4. On Sunday, June 18, 1989, Claimant, accompanied by his wife and two children, drove to the typist in order to pick up the transcript so that it could be delivered to Judge Jackson the following day. While stopped at a red light on his way to pick up the transcript, a motor vehicle slammed into the rear of Claimant's vehicle, causing multiple injuries.

5. The following day, June 19, 1989, Claimant informed Ronnie [Veronica] Sablonsky, an administrator with Court Operations, that he was injured in a car accident while travelling to his typist's residence to pick up a transcript.

Claimant promptly sought medical attention, initially by Geoffrey Temple, M.D., and later by a number of other physician[s].

6. Claimant presented the testimony of Dr. Mark Avart, who diagnosed [a number of disorders and injuries not in dispute herein]. Dr. Avart concluded that as a result of these injuries, Claimant was permanently disabled from returning to his employment as a court reporter. Dr. Avart further asserted that Claimant's disability was directly related to the automobile collision of June 18, 1989.

7. The Judge has considered the testimony of Dr. Avart and finds it to be credible. The Judge notes that the City did not present any medical testimony.

8. The Judge finds that with respect to the preparation of deposition [sic] transcripts, Claimant was not acting as an independent contractor; the City had the right to control, and indeed did control, Claimant's activities with respect to the preparation of deposition [sic] transcripts and set standards which must be met by court

reporters with respect to the preparation of transcripts.

9. Judge David Lawrence [1], Chief Deputy Court Administrator for the Philadelphia Court of Common Pleas, testified that the City would not accept a court reporter for employment unless the court reporter was willing to prepare transcripts as a result of notes taken in the courtroom. Mr. Lawrence also noted that the City sets forth certain requirements which a court reporter must meet in the generation of transcripts, including the time limit for preparation following the date of order, the amount which can be charged for the transcripts, the number of lines per page of transcript, the dimensions of the margins in the transcript, the type of paper upon which the transcript can be submitted, and other matters.

Mr. Lawrence further testified that court reporters are not permitted to deviate from the standards, and those that do are subjected to discipline by Court Administration.

This Judge accepts the testimony of Mr. Lawrence.

10. The Judge notes that Claimant was driving to a typist to pick up a transcript which he had been ordered to produce to a Court of Common Pleas judge the following day.

11. In finding that Claimant's activities on June 18, 1989 were within the course and scope of his employment with the City, the Judge notes that Court Administration granted court reporters wide latitude in the methods by which they could produce transcripts for presentation to judges. An important part of the court reporter's job profile is deciding for himself/herself the best method of producing requested transcripts and then producing those transcripts. According to Robert Glickstein, a thirty-two year veteran court reporter with the City, the practice of using outside typists was condoned and even encouraged by Court Administration due to the heavy work load imposed upon court reporters by the City.

12. The primary duty of a court reporter was to take notes of testimony in the courtroom itself. If the court reporters finished early in a particular courtroom, they were obligated to call Court Administration, which would then assign the court reporter to a different courtroom for the remainder of the day.

During the normal 9:00 a.m. to 5:00 p.m. work day in which the court reporters would not actually be engaged in the taking of notes, court reporters were required to perform a number of other tasks, including returning phone calls to attorneys requesting notes, dealing with pro se litigants, dealing with judges, delivering transcripts, filing notes of testimony, and many other activities. These activities were in addition to the reporter's obligation to prepare transcripts.

13. In 1989, between 25 and 35 court reporters were manual court reporters who used typists to prepare transcripts and the Court Administration was aware of this practice and approved it.

14. As a result of the combination of a heavy work load and a lack of resources provided to court reporters by the City, court reporters had to work nights and weekends in order to keep up with their work loads. Many court reporters, including Claimant, chose to perform work at home, a practice condoned and encouraged by Court Administration.

. . . .

1. Although the WCJ referred to Chief Deputy Court Administrator David Lawrence as "Judge" David Lawrence, we note that Mr. Lawrence has not been commissioned, nor does he serve as a Judge.

16. The Claimant has been disabled from his employment as a court reporter for the City of Philadelphia from June 18, 1989 and continuing therefrom as a direct result of injuries he sustained in the motor vehicle accident which occurred on that date, while Claimant was acting in the course and scope of his employment with the City of Philadelphia.

WCJ's Decision, pp. 2–4. As a result of these findings of fact, the WCJ concluded that Claimant sustained his burden of proving his entitlement to temporary total disability workers' compensation benefits from Employer, that Claimant gave proper notice of the work injury to Employer, and that Claimant was entitled to payment of attorney's fees from Employer because of unreasonable contest.

The Board reversed. In coming to its decision, the Board reviewed all of the testimony presented regarding Claimant's duties, the procedures by which court reporters obtained transcripts, and the financial arrangements pertaining to a court reporter's remuneration for preparing and delivering transcripts. The Board then concluded that the facts of this case were similar to those in *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier Express)*, 158 Pa.Cmwlth. 76, 631 A.2d 693 (1993), *petition for allowance of appeal denied*, 537 Pa. 613, 641 A.2d 313 (1994), and that *Johnson* controlled the outcome of the present case. In *Johnson*, we concluded that a thirteen-year-old newspaper delivery person was an independent contractor, not an employee of the publisher of the newspaper that he delivered. After balancing factors relevant to the issue of an employment relationship, we determined that the publisher did not exercise sufficient control over the delivery person's work and manner in which it was performed to establish an employer-employee relationship.

The Board opined in the present case that Employer did not exercise control over the manner by which court reporters prepared and provided transcripts. The Board noted that Claimant hired the typist who prepared the transcript that he was picking up when injured, and that employees are typically not empowered with hiring or paying other personnel. The Board also noted that Employer considered court reporters to be acting as independent contractors when they prepared transcripts, and that the court reporters were paid additional money per transcript without deduction of payroll taxes. The court reporters were issued a federal form 1099 for these additional payments. Thus, the Board concluded that the evidence established that Claimant was acting as an independent contractor when he was injured.

The Board further determined that Claimant was not furthering Employer's business at the time he was injured, but only his own; nor was Claimant acting on a special mission for Employer at the time. The Board observed that Employer had not directed Claimant to engage an outside typist: the Board opined that Claimant could have typed the transcript himself.

Finally, the Board determined that Claimant failed to give adequate notice of the injury to Employer pursuant to Sections 311 and 312 of the Workers' Compensation Act (Act).[2] The Board stated that Claimant testified only that he would not be in to work because he had been in a car accident while going to his typist's house to pick up a transcript. Because the Board determined that Claimant failed to establish his eligibility for workers' compensation benefits, the Board also determined that Employer had a reasonable contest to his claim. This petition for review followed.

This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation oc-

___

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 631 and 632.

curred. *Columbo v. Workmen's Compensation Appeal Board (Hofmann)*, 162 Pa. Cmwlth. 307, 638 A.2d 477 (1994). The WCJ is the sole arbiter of the credibility and the weight of testimony and other evidence, and he or she is free to reject or accept the testimony of any witness in whole or in part. *Id.* So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Id.; Dancison v. Workmen's Compensation Appeal Board (Penn Hills Senior High School Claims Management Services)*, 145 Pa. Cmwlth. 10, 602 A.2d 423 (1992), *petition for allowance of appeal denied*, 532 Pa. 666, 616 A.2d 987 (1992). Further, this Court must review the evidence in the light most favorable to the party prevailing before the WCJ, Claimant in this matter, extending to that party the benefit of all inferences reasonably deducible from the evidence. *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Hoover)*, 680 A.2d 40 (Pa.Cmwlth. 1996).

Claimant argues that (1) the Board erred by substituting its own findings of fact for those of the WCJ in determining that Claimant was not an employee of Employer at the time of the accident; (2) the WCJ correctly determined that Claimant was Employer's employee at the time of the accident; (3) the WCJ correctly determined that Claimant was acting within the scope of his employment at the time of the accident; (4) the WCJ correctly determined that Claimant gave adequate notice to Employer as required by the Act; and (5) the WCJ correctly granted Claimant attorney's fees because of Employer's unreasonable contest. We agree with all but the final issue.

■ We first recognize that the question of whether a claimant is an employee or an independent contractor is one of law, reviewable by the Board and this Court.

*Johnson.* This review, however, is to be based upon the findings of fact. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa. Cmwlth.1995). Here, the Board determined from the evidence that Employer "did not control the manner in which the court reporter provided ... transcripts as indicated by the ... testimony." Board's Opinion at 9. The WCJ, however, found as a fact that Employer "had the right to control, and indeed did control, Claimant's activities with respect to the preparation of ... transcripts and set standards which must be met by court reporters with respect to the preparation of transcripts." WCJ's Decision, Finding of Fact No. 8. The WCJ then set forth its findings regarding what those controls were and the fact that a court reporter was subject to discipline for not conforming to these controls. *Id.*, Finding of Fact No. 9. These findings of fact are fully supported by the evidence of record. In fact, Employer's own witness, David Lawrence, largely supports them.[3] The Board therefore erred in formulating a finding of fact in contradiction to that found by the WCJ. *See Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996) (the Board exceeds its authority by substituting its credibility determinations for those of the WCJ and by reweighing the evidence).

■ Further, our review of the WCJ's findings of fact and the support thereof in the record compels the conclusion that the WCJ correctly concluded that Claimant was injured while acting as an employee of Employer. The Act does not set forth the manner by which we are to distinguish employees from independent contractors. There are, however, guidelines used to determine this issue. As we have stated:

> Our courts have set forth key factors to be considered in determining whether

---

**3.** Moreover, we note that the Board did not hold that any finding of fact made by the WCJ

was unsupported by substantial evidence.

a claimant is an independent contractor or an employee. Those elements include the right of the alleged employer to: (1) hire and fire the employee, (2) direct the manner of the employee's performance, and (3) control the work to be completed. ... While all of the factors are important, the most persuasive indicator of a claimant's employee or independent contractor status lies in the *right* to control either the work to be done or the manner in which the work is to be accomplished. ... If an alleged employer possesses this right, then an employer-employee relationship likely exists....

*Universal Am–Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 706 A.2d 400, 402 (Pa.Cmwlth.1998), *appeal granted*, —— Pa. ——, —— A.2d ——, 1999 WL 163919 (1999) (citations omitted; emphasis in original). *See also Johnson; Nevin Trucking.*

In this case, it must be emphasized that there is no dispute that Claimant, at the time of the accident, was a full-time employee of Employer, receiving a salary and employee benefits. He could be fired by Employer, and his work product was controlled by Employer.[4] Absent circumstances indicating the contrary, had Claimant been injured at the work place during regular working hours[5] there could be little argument that he was not injured during the course of his employment. The primary issue before us, however, was whether Claimant was engaged in his role as employee when he was injured on a Sunday while driving to pick up the transcript from the typist.

The argument that he was an independent contractor at the time of the accident is based upon testimony that the manner by which transcripts are to be produced was left to the court reporters. That is, the court reporters could type the transcripts themselves, hire a typist to prepare the transcript, use a computer to assist in the preparation of the transcript, or engage a note reader that would eliminate the need for dictating the testimony. Board's Opinion, p. 7. Moreover, the party that ordered the transcripts, either Employer or private attorneys, paid court reporters for the production of the transcripts. *Id.*, p. 6. Court reporters were also expected to supply their own equipment, including computers and the stenograph machines used in court. *Id.* (Of course, it is necessary for court reporters to own a stenograph machine for purposes of note taking, which Employer concedes is among the employment duties of their court reporters.)

The WCJ's well-supported findings of fact, however, dispel any argument that Claimant was acting as an independent contractor when he was injured. Although court reporters are given discretion in the manner by which they are to prepare transcripts, there is no question that they are expected, as part of their job duties, to prepare transcripts, especially when ordered to do so by the Court.[6] WCJ's Finding of Fact No. 9. A court reporter would not be hired by Employer if he or she was unwilling to prepare transcripts. *Id.* Employer dictated the standards by which transcripts were to be prepared, even if Employer did not dictate how the court reporter would physically produce the transcript. *Id.* Court reporters are subject to Employer's discipline for failing to prepare transcripts within the standards dictated by Employer. *Id.* Also, a court

---

**4.** Instantly, one sees a distinction with the facts of *Johnson.* The thirteen-year-old newspaper delivery person in *Johnson* had no such relationship with the publisher. Thus, the analogy drawn by the Board between *Johnson* and our case is plainly inapposite.

**5.** These hours were generally 9:00 a.m. to 5:00 p.m., but a court reporter could be di-

rected to remain until a trial or hearing terminated for the day, sometimes as late as 8:30 p.m. Lawrence Deposition, p. 8.

**6.** Employer's only witness even agreed that a court reporter's willingness to produce transcripts was an "indispensable requirement" of the job. Lawrence Deposition, p. 20.

reporter could be held in contempt of court for failing to produce a transcript ordered by a judge. Glickstein Deposition, pp. 55, 66.

The nature of a court reporter's job with Employer often compelled a court reporter to prepare transcripts during evening hours and weekends. WCJ's Findings of Fact Nos. 11, 12, and 14. Because of the heavy workload for court reporters, Employer condoned and encouraged the use of outside typists. *Id.*, Finding of Fact No. 11. In 1989, between twenty-five and thirty-five court reporters with Employer were "manual" court reporters that engaged outside typists to prepare transcripts with Employer's knowledge and approval. *Id.*, Finding of Fact No. 14. In fact, among the very few tools and supplies Employer would provide to court reporters was a "Stenoret," which is a dictating machine used to record testimony so that the tape may be used by a typist. Lawrence Deposition, p. 7; Glickstein Deposition, pp. 21–22.

The argument that the production of transcripts was not part of a court reporter's regular employment duties with Employer is therefore completely baseless, particularly where, as here, a judge ordered the production of the transcript. The fact that court reporters received additional money for such work is immaterial.[7] The fact that Employer was not concerned whether the court reporter prepared the transcript himself or herself or used outside services is, on balance, immaterial. The very nature of a court reporter's employment with Employer ne-

cessitated that the production of transcripts occur mostly after what has been described by testimony from both Claimant's witnesses and Employer's witness as very busy, hectic, and sometimes erratic regular work hours. The reasonableness of using outside typists for this production is therefore quite evident. As we have stated, "it is the [employer's] *right* to control and not the exercise of that right which determines the issue" of whether a claimant was an employee of the employer. *Northern Central Bank & Trust Co. v. Workmen's Compensation Appeal Board (Kontz)*, 88 Pa.Cmwlth. 277, 489 A.2d 274, 277 (1985) (emphasis in original). Where there is little need for an employer to actually control and supervise certain duties, it would be inappropriate to reach the conclusion that an employer-employee relationship did not exist because the employer did not actually exercise its right to control. *Id.*

The unique nature of Claimant's duties with Employer requires that we look broadly upon the whole of the employment relationship Claimant (and his fellow court reporters) had with Employer, and not narrowly focus upon the unusual circumstance that an employee has contracted Employer's work out to others. Moreover, the fact that Employer has no control over the typist who prepares the transcript may render the typist an independent contractor, but it does not convert a clear employment relationship with a court reporter into something less. Employer clearly had the *right* to control Claimant's activities.[8] We have further stated:

---

7. By analogy, many employers pay workers for overtime work commensurate with the amount and sometimes the nature of the overtime work. It is not unusual that remuneration for this work is made by separate check. Moreover, the fact that an employee receives a Form 1099 from the employer to verify his or her remuneration does not change an employment relationship into that of an employer-independent contractor. *See York Newspaper Co. v. Unemployment Compensation Board of Review*, 160 Pa.Cmwlth. 475, 635 A.2d 251 (1993), *petition for allowance of appeal denied*, 538 Pa. 652, 647 A.2d 906 (1994).

8. Employer condoned the use of outside typists. This does not mean that the matter was out of Employer's control. The testimony from Claimant's and Employer's witnesses established that a court reporter's job was such that outside help with the transcripts was sometimes needed. Employer did not provide sufficient equipment (or time) for all of its court reporters to prepare transcripts at the work place. Lawrence Deposition, p. 25; Glickstein Deposition, p. 23. Employer did, however, expect court reporters to produce transcripts. If Employer had instituted a

[O]ur Supreme Court has held that neither the workmen's compensation authorities nor the court should be solicitous to find contractorship rather than employment, and inferences favoring the claim need make only a slightly stronger appeal to reasons [sic] than those opposed.

*Southland Cable Co. v. Workmen's Compensation Appeal Board (Emmett),* 142 Pa.Cmwlth. 612, 598 A.2d 329, 331 (1991). Here, the inferences favoring the employment relationship at the time of the accident, as opposed to those favoring an independent contractor relationship, weigh heavily, not slightly.

■ Also, it is quite apparent that Claimant was acting within the scope of his work duties when he was injured. Claimant was required, as a part of his employment, to produce transcripts. Employer condoned and encouraged the use of outside typists to produce such transcripts. Employer understood that transcripts would be prepared beyond the regular workday. Claimant was ordered by Judge Jackson to produce a transcript in a matter by the Monday before the accident. En route to the typist on a Sunday, Claimant was injured. Therefore, Claimant was acting within the scope of his employment and furthering the interests of Employer at the time of his accident.[9] An employee shall be compensated for injuries "sustained while the employe is actually engaged in the furtherance of the business affairs of the employer, whether upon the employer's premises or elsewhere...." 77 P.S. § 411(1).

■ The WCJ and the Board came to different conclusions regarding whether

Claimant provided adequate notice to Employer of a work injury. Section 311 of the Act, 77 P.S. § 631, provides that an employee must give notice of her or his work-related injury to her or his employer within 120 days of the injury. Section 312 of the Act, 77 P.S. § 632, provides that such notice shall inform the employer of an ordinary description of the injury and that the injury occurred on or about a specified time at a specified place in the course of the employment. Whether an employee has complied with these notice requirements is a question of fact to be determined by the WCJ. *NGK Metals Corp. v. Workmen's Compensation Appeal Board (Bailey),* 698 A.2d 1365 (Pa.Cmwlth.1997).

■ Here, the WCJ specifically found that on the day following the accident, Claimant informed an administrator with the Court that he was injured in a car accident while travelling to his typist to pick up a transcript. WCJ's Finding of Fact No. 5. The WCJ further stated, as a conclusion of law, that "Claimant gave proper notice of his injury as defined by Section 311 of the Act." WCJ's Conclusion of Law No. 2. The evidence of record fully supports the WCJ's Finding of Fact No. 5 as well as the factual finding characterized as the WCJ's Conclusion of Law No. 2. Claimant testified that it was Employer's policy for an employee to notify the Court administrator Veronica Sablonsky in the event illness or accident kept the employee from working. Claimant testified that he informed Ms. Sablonsky of his injury in an accident, that his injuries prevented him from attending work, and that the accident occurred the previous day while en route to his typist to pick up a transcript or-

work rule prohibiting the court reporters from using outside typists, we have no doubt that Claimant would have been subject to discipline for violating that rule. An independent contractor, however, would not usually face such constraints.

9. The Board stated that Claimant had the option to type the transcript himself, thus eliminating the need to drive to the typist's

residence or office. Board's Decision, p. 11. This appears to be an assertion that Claimant could have acted in a way that would have cut the risk of injury. We fail to see how this is a proper inquiry under the Act. The Act, of course, provides for benefits to injured employees without exploring the issue of negligence or fault. *Wagner v. National Indemnity Co.,* 492 Pa. 154, 422 A.2d 1061 (1980).

dered by Judge Jackson. Notes of Testimony, pp. 174–76; 207–08. As it is part of a court reporter's employment duties to prepare transcripts at the order of judges, and as Employer was aware that court reporters used outside typists to type the transcripts, the evidence supports the WCJ's finding and conclusion that Claimant provided adequate notice of a work-related injury.[10]

■■■■■ Finally, the WCJ awarded to Claimant counsel fees because of a determination that Employer's contest was unreasonable. When a claimant prevails in a litigated case, the WCJ must assess counsel fees against the defendant pursuant to Section 440 of the Act, 77 P.S. § 996, unless the defendant establishes a reasonable basis for its contest. *Weiss v. Workmen's Compensation Appeal Board (Birch),* 106 Pa.Cmwlth. 361, 526 A.2d 839 (1997.), *petition for allowance of appeal denied,* 517 Pa. 612, 536 A.2d 1335 (1987). The issue of whether the defendant had a reasonable basis for its contest is one of law based upon whether the contest was brought to resolve a genuinely disputed issue or merely for purposes of harassment. *Id.*

Here, Employer presented no medical evidence in opposition to Claimant's evidence of disabling injury. Employer presented one witness to dispute Claimant's allegation that the injuries were work-related. Although this witness testified that Employer considered court reporters to be independent contractors for purposes of producing transcripts, this witness actually reinforced the testimony presented by Claimant that the production of transcripts was expected from Employer's court reporters as an indispensable part of their job. He also reinforced the testimony presented by Claimant that Employer condoned and encouraged the use of outside typists for the production of transcripts given the amount of work Employer required of court reporters during the workweek. Further, there was no dispute that Claimant was, at the time of the accident, a court reporter employed by Employer. There is no dispute that Claimant was injured while en route to picking up a transcript that was ordered by Judge Jackson.

■■■■ On balance, however, we must conclude that Employer contested this matter to resolve a genuinely disputed issue. Court reporters hired by Employers have a rather unusual manner of receiving remuneration for their expected duties. They are paid a base salary for a minimum forty-hour week, but are then paid separately when Employer requests a transcript. They are also paid privately by private attorneys for transcripts when requested. Employer produced enough evidence regarding these unusual working conditions to lead the Board to conclude that Employer lacked the requisite control to establish an employer-employee relationship for this one aspect of a court reporter's general duties. Further, neither party identified a case discussing and defining the employment relationship between an agency and its court reporters. Therefore, we conclude that Employer made a reasonable contest in this matter.

Accordingly, for the reasons stated above, we reverse the order of the Board insofar as it denies workers' compensation benefits to Claimant, and we affirm the Board's order insofar as it denies counsel fees for an unreasonable contest.

### ORDER

AND NOW, this 23rd day of September, 1999, the order of the Workers' Compensa-

---

**10.** In *Workmen's Compensation Appeal Board v. Potomac Edison of Pennsylvania,* 23 Pa. Cmwlth. 193, 350 A.2d 914 (1976), we held that the employer received sufficient notice of a work-related neck injury when the employee stated only that she had felt a pain in her neck when she stepped out of a truck (which occurred during the work day) and that she felt that she could not work the rest of the day. Here, Employer received far more information concerning a direct relationship between the injury and the work-related activity of Claimant when it occurred.

tion Appeal Board in the above-captioned matter is hereby reversed insofar that it reversed the grant of the claim petition of Petitioner, Joel Scher, and is affirmed insofar as it reversed the award of counsel fees to Petitioner for an unreasonable contest by Respondents.

KELLEY, Judge, dissenting.

I respectfully dissent.

While I agree that Claimant was an employee for purposes of taking notes of testimony in the courtroom, I do not agree with the majority that Claimant was an employee with regard to the production of transcripts. Claimant, not Employer, had total control over the manner in which the transcripts were prepared. Claimant alone determined how, where and when to prepare a transcript, whether to hire a typist and if so, who and the amount of compensation to be paid. Claimant also received additional payment for the production of transcripts from Employer and attorneys, which was apart from the salary provided by Employer. For these reasons, it is my belief that Claimant was acting as an independent contractor, not an employee, for purposes of preparing transcripts. As Claimant was injured en route to the typist to procure a prepared transcript, I believe that Claimant is not eligible to receive workers' compensation benefits. Accordingly, I would affirm the order of the Board denying workers' compensation benefits.