**The CITY OF NANTICOKE and State Workmen's Insurance Fund, Petitioners,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (ZIOLKOWSKI), Respondent.**

**Terry Ziolkowski, Petitioner,**

**v.**

**Workers' Compensation Appeal Board (The City of Nanticoke and State Workmen's Insurance Fund), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 2003.

Decided July 10, 2003.

Michael D. Yelen, Wilkes–Barre, for petitioner.

Charles R. Coslett, Kingston, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

The City of Nanticoke (Employer) and the State Workmen's Insurance Fund (SWIF) petition for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) to grant Terry Ziolkowski's (Claimant) claim petition. Claimant cross-petitions from an order of the Board that affirmed the WCJ's denial of attorney's fees.

On March 25, 1997, Claimant petitioned for benefits and alleged that he suffered a work-related injury on April 20, 1995, in the nature of "[c]oronary artery disease caused by high stress precipitated by Claimant's occupation [firefighter] ... Claimant believes and therefore avers that he is entitled to the presumption of Sections 108(o) and 301(f) of the Act, 77 P.S. [§§ ] 27.1(o) and 1401(f). In the alternative, Claimant avers that to the extent any physician deems Claimant's coronary artery disease to be preexisting, then his occupation aggravated the same." Claim Petition, March 25, 1997, at 1; Reproduced Record (R.R.) at 1a. Employer and SWIF denied all allegations.

The WCJ granted Claimant's petition and made the following pertinent findings of fact:

3. Prior to January 1, 1997, the Claimant had been employed as a firefighter for the City of Nanticoke for twenty-three (23) years and in April of 1995, was required to use sick time because of a heart condition and was treated by his family physician, Dr. Peter Decker, who referred him to Dr. Michael Harostock, a Cardiac Surgeon. Claimant was a member of International Association of Firefighters Local 2655 who had a Collective Bargaining Agreement with the City of Nanticoke and by June 2, 1995, had filed a grievance alleging that the Defendant [Employer] was violating the Collective Bargaining Agreement as a result of the Claimant using up his sick time and requested that he receive benefits as a result of the Heart and Lung Act. Subsequently as of September 1, 1995, as a result of the grievance, Claimant began receiving full salary from the Defendant [Employer] on the terms of the Heart and Lung Act which continued until December of 1996. The Claimant presented copies of correspondence including correspondence dated January 15, 1997, from the Solicitor for the City of Nanticoke in which it was agreed that Claimant's employment with the City of Nanticoke would be considered terminated effective January 1, 1997, and the City would stipulate to the Claimant's permanent disability without the need for an [sic] inconvenience of further medical examinations.

. . . .

8. On May 26, 1998, the Claimant died and his widow is receiving $1,249.64 per month as a result of pension benefits from the City of Nanticoke, for which the Employer claims a credit.

. . . .

10. The issue for determination is whether the receipt of Heart/Lung benefits by the Claimant precludes the Workers' Compensation Insurance Carrier from denying the causation of Claimant's heart condition based on the doctrine of collateral estoppel.

. . . .

12. After reviewing all of the evidence presented by both parties, this Workers' Compensation Judge finds as follows:

. . . .

b. That Claimant was approved for Heart/Lung benefits by the former City Manager, John Hook and by the former City Solicitor, Jerome Cohen, in September of 1995;

c. That despite no documentation having been found for Raymond Woronowicz to document approval of Heart/Lung benefits payable to Claimant, those benefits have been paid to Claimant for a period of fourteen (14) months before termination;

d. That the Claimant received weekly compensation from the City of Nanticoke from September, 1995 to December, 1996 approved by officials of the City of Nanticoke and while there may be a question as to whether the Claimant was injured in the performance of his duties and was temporarily incapacitated from performing those duties, the City of Nanticoke waived any objection by agreeing to pay Heart/Lung benefits to the Claimant which extended retroactively from April or May of 1995 to December, 1996;

e. That the City of Nanticoke had sufficient opportunity to investigate the claim for benefits and chose to grant Claimant Heart/Lung benefits and thereby waive the issuance of causation;

f. That the correspondence exchanged between counsel for the respective parties does not indicate or substantiate that the Claimant agreed that his work-related disability had finally ceased or that the Claimant was no longer disabled.

. . . .

h. That the term disability has the same meaning under both the Heart and Lung Act and the Workers' Compensation Act and that the Employer is collaterally estopped, which precludes its Workers' Compensation Carrier from asserting a contrary position in the Workers' Compensation hearing.

i. The State Workmen's Insurance Fund is obligated to accept the determination of the City of Nanticoke, that the Claimant was permanently disabled as a result of the work-related disability.

WCJ's Decision, March 30, 1999, Findings of Fact (F.F.) Nos. 3, 8, 10, and 12(b-f and h-i) at 3, 5, and 9–11. The WCJ granted Claimant's petition and denied his request for attorney's fees.

The Board affirmed and concluded:

. . . [T]he Judge found that Claimant was approved for Heart and Lung Benefits in September of 1995 and had received those benefits for a period of fourteen months. We discern no error in these findings. Furthermore, as those benefits had been approved and Claimant had been receiving those benefits, Defendant [Employer] was estopped from denying causation. Even though the City later determined after an investigation in 1996, that there were no records supporting an award of the Heart and Lung Benefits and no records substantiating the basis for that award, the benefits had been awarded and paid to Claimant. Defendant [Employer] could have investigated the issue before awarding those benefits in 1995. Defendant [Employer] can not now try and deny causation where it may have mistakenly awarded Claimant Heart and Lung Benefits.

. . . .

Claimant . . . argues that the Judge erred in failing to award attorney fees for Defendant's [Employer] unreasonable contest of the Claim Petition where it had been paying Claimant Heart and Lung Benefits. We disagree.

Board's Decision, January 8, 2001, at 4 and 7.[1]

1. The Board remanded to the WCJ "for . . .     specific findings . . . [on] whether or not De-

### Employer's Appeal

■ Essentially, Employer contends[2]: 1) that collateral estoppel does not preclude Employer from denying causation where there was no "actual litigation" involved; 2) that the Board denied Employer the opportunity to present medical evidence; and 3) that the Board erred when it denied Employer credit for wages received by Claimant.

### A. Collateral Estoppel

In *Kohut v. Workmen's Compensation Appeal Board (Township of Forward)*, 153 Pa.Cmwlth. 382, 621 A.2d 1101, *petition for allowance of appeal denied*, 535 Pa. 650, 633 A.2d 154 (1993), this Court enunciated the criteria necessary for collateral estoppel:

> ... Under the principle of collateral estoppel or issue preclusion '[w]here a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action'. ... *The judgment in the prior action operates as estoppel in the second action, however,* *only as to those issues that (1) are identical (2) were actually litigated (3) were essential to the judgment and (4) were material to the adjudication ....* (citations omitted and emphasis added).

*Id.* at 1103.

■ Employer contends that the second criterion was not satisfied because to be "actually litigated" there must have been a hearing and a final determination under the Heart and Lung Act, a procedure not followed in this present controversy.

In his testimony, Claimant explained that in April of 1995, "I was required to use sick time because of a health problem I had as [sic] a heart condition." Notes of Testimony, June 5, 1997, (N.T. 6/5/97) at 8–9; R.R. at 10a–11a. As a result of Employer's actions the International Association of Fire Fighters, Local 2655 (Union) filed a grievance.[3] N.T. 6/5/97 at 11; R.R. at 13a. Claimant received his full salary under the terms of the Heart and Lung Act from "September of 1995 until December of 1996."[4] N.T. 6/5/97 at 11; R.R. at 13a.

John Hook (Hook), former Budget Director, testified. He informed Claimant that "we'll keep you on your sick days and

---

fendant [Employer] was entitled to a credit [for any pension benefits paid to Claimant between January 1, 1997, and May 26, 1998] before he [WCJ] awarded such credit ..." Board's Decision at 7. On remand, Employer decided not to seek a credit for pension benefits and the WCJ "ordered that the credit for pension benefits granted to [C]laimant is deleted from that prior order and that the defendant [Employer] is directed to pay compensation benefits to the [C]laimant and/or his widow in the amount of $377.59 per week without any credit for pension benefits received by [C]laimant." WCJ's order of February 8, 2002. On December 27, 2002, the Board affirmed the WCJ's decision granting Claimant's claim petition after remand.

2. This Court's review is limited to a determination of whether an error of law was com-

mitted, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

3. The Union alleged in the grievance that "Grievant [Claimant] along with Local 2655 [Union] feel that the City [Employer] is violating Article XXII (Heart and Lung Benefits) of the Collective Bargaining Agreement." Grievance, Local Union No. 2655 of the International Association of Fire Fighters, AFL–CIO, June 2, 1995, Grievance # L–95 at 1.

4. The grievance noted that it was "rectified as of September 1, 1995." Grievance at 1.

then work it from the approval whether you go on Heart and Lung." Notes of Testimony, December 11, 1997, (N.T. 12/11/97) at 11; R.R. at 52a. Hook "approached Mayor Kobela" and stated that "[i]t's not my decision to qualify him under Heart and Lung ... [s]o we gave all this information to our solicitor at that time, which was Atty. Cohen." N.T. 12/11/97 at 11; R.R. at 52a. Hook placed Claimant on Heart and Lung benefits pursuant to the direction of Solicitor Cohen. N.T. 12/11/97 at 20; R.R. at 61a.

Here, the evidence established that Claimant's claim for Heart and Lung benefits was "actually litigated." First, the Heart and Lung proceeding began when the Union filed a grievance and alleged that Employer violated Article XXII of the Collective Bargaining Agreement when it

5. Employer informed Claimant of the following:

> This will confirm our understanding with respect to Mr. Ziolkowski and final termination of his employment with the City of Nanticoke.
> 1. Mr. Ziolkowski's employment with the City of Nanticoke will be considered terminated effective January 1, 1997 and all rights that he may or does have pursuant to any Collective Bargaining Agreement except as provided herein, will be terminated as of that date.
> 2. Mr. Ziolkowski will receive the sum of $18,553.35 (less statutory required deductions) in full and complete payment for wages and benefits due him. He will be paid in accordance with the Collective Bargaining Agreement with payment to commence upon the acceptance by him of the terms of this letter.
> 3. *The City's representatives to the Firemen's Pension Board will stipulate to Mr. Ziolkowski's permanent disability without the need for and inconvenience of further medical examinations.* (emphasis added).
> 4. By acceptance of the terms of this letter, Mr. Ziolkowski agrees that all funds due him under the terms of the Collective Bargaining Agreement, with the exception of the pension issue, have been satisfied and he further releases the City of Nanticoke

failed to pay Claimant Heart and Lung benefits. Second, Hook, the Budget Director, and the Mayor sought a determination by Solicitor Cohen whether Claimant was entitled to Heart and Lung benefits. Third, after review, Solicitor Cohen determined that Claimant was entitled to Heart and Lung benefits and instructed Hook to begin payment. Fourth, the arbitrator acknowledged that the "[g]rievance was rectified as of Sept 1[sic] 1995", the date Employer began payment of Heart and Lung benefits to Claimant. Last, Employer's termination of Claimant's firefighter position and admission that Claimant was permanently disabled[5] was an acknowledgment that the Heart and Lung benefits were "actually litigated."

In *Kohut*[6], this Court[7] determined:

> from any further liability in connection therewith on his employment.
> Letter from David E. Koff, Employer's attorney, to Charles R. Coslett, Claimant's attorney, January 15, 1997, at 1; R.R. at 217a.

6. Terry Kohut (Kohut), a police officer, was injured when his police vehicle was struck by another vehicle on December 29, 1984. Pursuant to Section 1 of the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended.* 53 P.S. § 637, Kohut received his "full rate of salary" because he was temporarily disabled due to a work-related injury. Kohut returned to work on October 22, 1985, and signed a final receipt as to his workers' compensation benefits. Kohut's heart and lung benefits also ceased. On January 14, 1986, Kohut's work-related injury recurred and his workers' compensation and heart and lung benefits were reinstated. On March 6, 1987, the Township of Forward (Township) sought to terminate benefits and requested a supersedeas. On April 16, 1987, the referee (now WCJ) stayed Kohut's workers' compensation benefits. On May 23, 1988, the Township Supervisors determined that Kohut was permanently disabled and terminated him from his position. As a result, Kohut was ineligible for heart and lung benefits. On December 21, 1988, the referee terminated Kohut's workers' compensation benefits and the board affirmed. On

Here Employer admitted in the Heart and Lung Act proceeding that Claimant would never again be able to do his time-of-injury job because of his work-related disability. Having made such an admission it cannot now be permitted to assert a contrary position for the same period of time. In short, the issue of whether Claimant would be able to return to his time-of-injury job has been finally decided and Employer is collaterally estopped from relitigating it for the same period of time.

*Id.* at 1104.

This Court must conclude that Employer was collaterally estopped from relitigating the issue of whether Claimant was permanently disabled from a work-related injury in the workers' compensation proceeding. *Kohut.*

■ Assuming *arguendo* that the Heart and Lung benefits were not "actually litigated" even though actually paid to Claimant, this Court believes that Employer still may not deny liability. Here, the WCJ found that Employer agreed to pay Heart and Lung benefits on September 1, 1995, retroactive to April or May of 1995 to December of 1996. *See* F.F. No. 12(d) at 10. Employer had more than fifteen months to investigate Claimant's eligibility for benefits and instead chose to pay Heart and Lung benefits. Employer may not now claim that it mistakenly paid benefits to Claimant. "[T]he Department [Employer] waived the issue of Claimant's original eligibility for benefits under the Act when it began paying Claimant Heart and Lung benefits, thereby accepting liability for his injury, and cannot now dispute the issue of causation on the basis that it made a mistake previously." *Gribble v. Pennsylvania Department of Corrections,* 711 A.2d 593, 595 (Pa.Cmwlth.1998).

### B. Medical Evidence

Employer next contends that it was denied the opportunity to present medical evidence to dispute the allegations in Claimant's claim petition.

■ In the present controversy, Claimant elected not to present any medical testimony and relied on the collateral estoppel issue. As a result, Employer was not prejudiced when the WCJ decided to close the record without the submission of medical evidence or testimony on the part of Employer.

### C. Credit For Actual Wages

■ Lastly, Employer contends that the WCJ failed to award Employer credit for wages received by Claimant during the period of disability.

After review of the record, this Court concurs with the Board's determination:

Defendant [Employer] next argues that the Judge erred in failing to award it a credit for the income earned by Claimant as a 911 dispatcher subsequent to his retirement. We disagree. The record contains no evidence that Claimant had been working as a 911 operator and had received a salary for the same.... No evidence was submitted to support this statement [8] by Counsel nor to sup-

appeal, Kohut argued that the Township's "adjudication ... of permanent disability rendered in the Heart and Lung Act proceeding ... is binding in the workmen's [now workers'] compensation proceeding on the basis of collateral estoppel." *Id.* at 1103. On appeal, this Court agreed and reversed.

**7.** This Court notes that in *Kohut* the criterion of whether the issues were "identical" was challenged. However, once all four criteria were satisfied this Court determined that collateral estoppel applied.

**8.** Employer stated at the hearing that "[Claimant] [t]hereafter worked at County 911 August 18, 1997 to 12/31/97 ... [a]s of

port a finding that Claimant received wages during this period. Thus, we do not believe the Judge erred in not awarding a credit or modification of benefits for this period.

Board's Decision at 6.

### Claimant's Cross–Appeal

 Claimant contends that because the WCJ and the Board determined that Employer was collaterally estopped from denying causation Claimant was entitled to an award of attorney's fees.

Section 440 of the Workers' Compensation Act (Act)[9], 77 P.S. § 996 provides:

(a) In any contested case where the insurer has contested liability in whole or in part ... the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee....: *Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.* (emphasis added).

 "When a claimant prevails in a litigated case, the WCJ must assess counsel fees against the defendant pursuant to Section 440 of the Act, 77 P.S. § 996, unless the defendant establishes a reasonable basis for the contest." *Scher v. Workers' Compensation Appeal Board (City of Philadelphia),* 740 A.2d 741, 750 (Pa. Cmwlth.1999), *citing Weiss v. Workmen's Compensation Appeal Board (Birch),* 106 Pa.Cmwlth.361, 526 A.2d 839, *petition for allowance of appeal denied,* 517 Pa. 612, 536 A.2d 1335 (1987). "The issue of whether the defendant had a reasonable

basis for its contest is one of law based upon whether the contest was brought to resolve a genuinely disputed issue or merely for purposes of harassment." *Id.* at 750.

Here, the WCJ denied Claimant's request for attorney's fees based upon a finding of reasonable contest and the Board affirmed. After review, this Court concludes that the WCJ properly found that Employer had a reasonable basis to contest this matter, i.e. "whether or not Claimant's receipt of Heart and Lung Benefits alone with no formal award, would be enough to collaterally estop Defendant [Employer] from re-litigating the issue of causation." Board's Decision at 7.

Accordingly, this Court affirms the Board's grant of compensation benefits and the denial of attorney's fees.

### *ORDER*

AND NOW, this 10th day of July, 2003, the orders of the Workers' Compensation Appeal Board in the above-captioned matters are affirmed.

---

12/31/97, he was no longer working." N.T. 12/15/98 at 7; R.R. at 234a.

**9.** Act of June 2, 1915, P.L. 736, *as amended.*